[Crim. No. 905.   Second Appellate District, Division Two.—February
28, 1923.]

# In the Matter of the Application of M. W. HIXSON for a Writ of Habeas Corpus.

[1] INTOXICATING LIQUORS—PROHIBITION OF SALE FOR MEDICINAL PUR-
POSES—POLICE POWER.—A state, or a political subdivision thereof,
in the exercise of its police power, may not only regulate, but may
absolutely prohibit, the sale of alcoholic liquor as a medicine.

[2] POLICE POWER—USEFUL ARTICLE—PROHIBITION OF SALE.—While an
article may be useful for some purposes, its harmfulness to the
public from its general use may be so great and widespread and
its secret dispositon may be so difficult to prevent that the legis-
lature, to protect the public, may absolutely forbid its manufacture
or sale, or both, so as effectually to root out its evil effects
altogether.

[3] INTOXICATING LIQUORS—LIQUOR PRESCRIPTIONS—MUNICIPAL ORDI-
NANCE—VOLSTEAD ACT.—A municipal ordinance adopted prior to
the ratification of the eighteenth amendment of the constitution of
the United States, prohibiting the filling of physicians' prescrip-
tions by licensed pharmacists calling for more than half a pint of
alcoholic liquor, without placing any limitation upon the number
of prescriptions which may be written and filled for the same
person within any fixed period, was not rendered unreasonable and
void by the passage of the national prohibition law, which provides
that not more than one pint of spirituous liquor shall be prescribed
within any period of ten days for the use of the same person.

[4] ID.—FILLING OF PRESCRIPTIONS—ORDINANCE NOT UNLAWFULLY DIS-
CRIMINATORY.—A municipal ordinance dealing only with alcoholic
liquors and providing for filling liquor prescriptions is not objec-
tionable as being discriminatory between the filling of prescriptions
for alcoholic liquors and the filling of prescriptions for drugs or
other curative agencies.

[5] ID. — ENACTMENT OF LAWS TO SECURE PROHIBITION — POWER OF
STATE.—The state, or a political subdivision thereof, in the exercise
of the police power which is inherent in the state and preserved
to it by the tenth amendment to the federal constitution, and the

5.   Constitutional right of municipalities to prohibit sale of in-
toxicating liquors, note, 15 L. R. A. (N. S.) 937.

Constitutional provisions for manufacture, sale, and keeping of in-
toxicating liquors, notes, 3 A. L. R. 285; 10 A. L. R. 1587; 11
A. L. R. 1320; 49 L. R. A. (N. S.) 182; L. R. A. 1917D, 938;
L. R. A. 1918A, 419, 942.

federal government, in the exercise of the delegated power which it derives from the eighteenth amendment, may each enact laws to secure prohibition, with the one limitation that no legislation can give validity to acts prohibited by the eighteenth amendment.

[6] ID.—NULLIFICATION OF PROVISION OF ORDINANCE—VOLSTEAD ACT—EFFECT OF.—Where all of the provisions of a municipal ordinance dealing with alcoholic liquors were valid when it was adopted and strictly within the constitutional power of the city and of the electors who voted upon it as an initiative measure, the passage of the national prohibition law nullifying the provision permitting the sale of wines and beers did not nullify the whole ordinance.

[7] ID.—VOLSTEAD ACT—PROHIBITIVE STATUTE.—The national prohibition law, commonly known as the Volstead Act, enacted pursuant to the eighteenth amendment of the constitution of the United States, is a prohibitive statute and does not confer any right to possess intoxicating liquors.

PROCEEDING on Habeas Corpus to obtain discharge from custody after conviction of violation of municipal ordinance. Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

Ray E. Nimmo and Lloyd W. Moultrie for Petitioner.

W. D. McConnell, J. Friedlander, J. D. Taggart and S. W. Odell for Respondent.

FINLAYSON, P. J.—Petitioner, a licensed pharmacist doing business in the city of Los Angeles, asks a discharge on *habeas corpus* from imprisonment under a sentence convicting him of filling a prescription for alcoholic liquor in violation of an initiative measure adopted by the electors of the city and commonly known as the Gandier ordinance. The ordinance was adopted prior to the ratification of the eighteenth amendment and the passage of the national prohibition law. A complaint was filed in the police court charging petitioner with filling a physician's prescription calling for more than eight ounces of alcoholic liquor, in violation of the city ordinance. He was convicted in that court, and on his appeal to the superior court the judgment of conviction was affirmed on June 5, 1922—all of which antedated the state law commonly known as the Wright Act. The single question presented for decision is whether the

ordinance, in so far as it relates to the filling of prescriptions by licensed pharmacists, is valid and enforceable since the adoption of the eighteenth amendment and the enactment of the national prohibition law, commonly known as the Volstead Act.

The Gandier ordinance, so far as its provisions are germane to the question, provides: "Sec. 2. It shall be unlawful to sell, serve or give away any alcoholic liquor within the city of Los Angeles, except as hereinafter provided. . . . Sec. 5. Nothing in the preceding sections of this ordinance shall be construed as rendering unlawful . . . (c) the filling only, at pharmacies, on the date of issuance, but not the refilling, of prescriptions calling for not to exceed eight ounces of alcoholic liquor each. Every such prescription shall be . . . signed . . . by a duly licensed physician, and shall have endorsed upon it by such physician . . . the statement that in his opinion the liquor prescribed is required by such person as a medicine."

The Volstead Act, in section 7, contains this provision: "No one but a physician holding a permit to prescribe liquor shall issue any prescription for liquor. . . . Not more than a pint of spirituous liquor to be taken internally shall be prescribed for use by the same person within any period of ten days, and no prescription shall be filled more than once."

It will be noticed that while the city ordinance limits to eight ounces (half a pint) the amount which may be prescribed and sold at any one time for medicinal use, it places no limitation upon the number of prescriptions which may be made and filled for the same person within any fixed period of time. So that, at the time of the adoption of the ordinance, a physician, if in good faith he deemed it necessary, could every day, and perhaps more than once on every day, issue for any patient a prescription for alcoholic liquor, provided each prescription called for not more than eight ounces. This he could continue to do until such time as his patient no longer needed the stimulant. And it was not unlawful for a licensed pharmacist to fill such daily prescriptions, provided no one of them called for more than eight ounces. It further will be noticed that though the Volstead Act permits a pint (sixteen ounces) of spirituous liquor to be prescribed by a physician for the use of a patient, not

more than that amount may be prescribed for the same person within any period of ten days, and no prescription shall be filled more than once.

We have not deemed it necessary to set forth all of the provisions of the Volstead Act which relate, directly or indirectly, to liquor prescriptions. When all of its provisions are considered there may be some question as to whether the act permits a physician to issue any number of prescriptions to the same person in any period of ten days if the aggregate of the amounts so prescribed does not exceed one pint. Petitioner claims that when all the provisions of the National Prohibition Act are read together that law must be construed as meaning that but one prescription may be issued to the same person within the ten-day period, regardless of whether such prescription calls for a pint or for less than a pint. For the purpose of this decision, but for the purpose of this decision only, we shall assume that in this respect petitioner's construction of the Volstead Act is correct.

At a hearing had before this court on the return made to our writ of *habeas corpus*, six physicians were examined as expert witnesses for the purpose of aiding us in determining the medicinal value of alcoholic liquors. All of them agreed that such liquors do possess some medicinal value. Some of the physicians testified that there are certain substitutes for alcoholic liquors which make the use of such liquors unnecessary and even undesirable. Others testified that in their opinion there is no substitute which can effectually take the place of alcoholic stimulants in certain cases, as in pneumonia, for example. Of these latter witnesses two or three testified that not even a pint of whisky in ten days (the maximum amount permitted by the Volstead Act) would be sufficient in some cases.

[1] Petitioner's principal contention is that while a state or a political subdivision thereof, in the exercise of its police power, may *regulate* the sale of alcoholic liquors for medicinal uses, it cannot *prohibit* their sale for such uses. This proposition constitutes the major premise of petitioner's argument on his first point. He argues that the restrictions in the Gandier ordinance, when taken in conjunction with those in the Volstead Act, so limit the amount of alcoholic liquor which pharmacists in the city of Los Angeles may now sell in filling prescriptions that the combined effect of the

operation of the ordinance and the national act has been to prohibit the sale in Los Angeles of an amount of alcoholic liquor sufficient to serve the purposes of a medicine. That is to say, though the Gandier ordinance does not forbid the issuance of more than one prescription to the some person in any period of ten days, it does make it an offense for a pharmacist to fill any single prescription calling for more than eight ounces; and under petitioner's construction of the Volstead Act no physician is allowed to issue more than one prescription for the same person in any ten-day period. Therefore it is claimed that the practical effect of the combined operation of the national act and the city ordinance is to make it unlawful for a licensed pharmacist in the city of Los Angeles to sell to any one person, on a physician's prescription, more than eight ounces of alcoholic liquor in any period of ten days, which amount, it is claimed, is so small as to be valueless for medicinal purposes. Assuming, without conceding, that such is the result of the operation of the city ordinance and the national law, we still do not think that the ordinance has been rendered unreasonable. For reasons presently to be stated, we think that the ordinance would not have been unreasonable and void if it had entirely prohibited the sale of alcoholic liquor as a medicine. And if the city possessed the power entirely to prohibit its sale as a medicine, then, *a fortiori*, the limitation to eight ounces in ten days would not have been an unreasonable restriction.

It may be said *in limine* that if the argument whereby petitioner would strike down the city ordinance be tenable, then his argument would seem to be equally fatal to the national enactment, in so far as the prescription of alcoholic liquor for medicinal use is concerned. For, according to the testimony of petitioner's medical experts, the maximum amount which it is assumed the Volstead Act permits to be prescribed—one pint, or sixteen ounces, in ten days—has but little, if any, more medicinal value than would be possessed by eight ounces administered in the same period of time; and neither amount, according to those witnesses, is sufficient to meet the exigencies of certain cases, as, for example, where the patient has been stricken with pneumonia. But waiving this consideration, and assuming that the restriction which the Volstead Act imposes on the prescription and sale

of spirituous liquors for medicinal use is within the authorized powers of Congress under the eighteenth amendment— and we are fully convinced that it is—and assuming also that petitioner's construction of the national prohibition law is correct, still we do not agree with his premise that a municipal corporation, in the exercise of its police power, may not absolutely prohibit the sale of alcoholic liquor as a medicine.

That the state, or any political subdivision thereof vested with local police power, may prohibit all traffic in intoxicating liquors for *beverage* purposes is no longer a debatable proposition. It is possible that such drastic prohibitory legislation, however well-intentioned, may prove to be a Pandora's box from which may escape new and unforeseen social ills to afflict humanity. But that is a consideration to be addressed solely to the law-making branch of the government. With it the courts have no concern.

Not only may the sale of intoxicants as beverages be prohibited, but it also is well established that a state, or any of its political subdivisions invested with local police power, may adopt such measures having a real or substantial relation to the suppression of traffic in intoxicating beverages as it may deem necessary for that purpose in order to make its action effective. And though alcoholic liquor when used for certain purposes may be beneficial and useful, still its sale even for such beneficial and useful purposes may be prohibited if it can be seen that prohibitory measures of that nature have a real and substantial relation to the suppression of all traffic in intoxicants for beverage purposes. In *Purity Extract Co.* v. *Lynch,* 226 U. S. 192 [57 L. Ed. 184, 33 Sup. Ct. Rep. 44, see, also, Rose's U. S. Notes], the United States supreme court stated the principle as follows: "That the state in the exercise of its police power may prohibit the selling of intoxicating liquors is undoubted. (Citing authorities.) It is also well established that when a state, exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction, separately considered, is innocuous, it may not be included in a prohibition the scope of which is regarded as essential in the

legislative judgment to accomplish a purpose within the admitted power of the government. (Citing authorities.) With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended." See, also, *People* v. *Velarde,* 45 Cal. App. 520 [188 Pac. 59].

If wine, whisky, brandy, and the like are useful for medicinal and other nonbeverage purposes, still the evils which flow from their use as a beverage so greatly menace the health, peace, morals, and safety of society that the lawmaking branch of the government may with reason regard those evils as overwhelmingly outweighing the good services which such liquors may perform as medicines. If experience shows that the sale of intoxicating liquors for medicinal purposes opens the door to that train of evils which admittedly follows upon their general use as beverages, then why may not their use as medicines be absolutely prohibited? That the sale of such liquors for medicinal purposes does greatly facilitate the evasion of the whole scheme of prohibitory legislation is a matter of common notoriety. A city's entire scheme of prohibition might fail if pharmacists were to be permitted to sell alcoholic liquors for medicinal use. And because this is so, the city of Los Angeles, had it deemed it wise and expedient, could have forbidden the sale of such liquors as medicines even though such sales, regarded as separate transactions, might be entirely innocuous.

[2] The fallacy of petitioner's position lies in the assumption that if an article is useful for any purpose its sale cannot be wholly forbidden. But notwithstanding an article may be useful for some purposes, its harmfulness to the public from its general use may be so great and widespread and its secret disposition may be so difficult to prevent that the legislature, to protect the public, may absolutely forbid its manufacture or sale, or both, so as effectually to root out its evil effects altogether.

Though no case directly in point has been called to our attention, the principles announced in the following decisions of the United States supreme court are determinative: *Bartemeyer* v. *Iowa,* 18 Wall. 129 [21 L. Ed. 429, see, also, Rose's U. S. Notes]; *Boston Beer Co.* v. *Massachusetts,* 97

U. S. 25 [24 L. Ed. 989]; *Foster* v. *Kansas,* 112 U. S. 205
[28 L. Ed. 696, 5 Sup. Ct. Rep. 8]; *Mugler* v. *Kansas,* 123
U. S. 623 [31 L. Ed. 205, 8 Sup. Ct. Rep. 273]; *Kidd* v.
*Pearson,* 128 U. S. 1 [32 L. Ed. 346, 9 Sup. Ct. Rep. 6];
*Powell* v. *Pennsylvania,* 127 U. S. 678 [32 L. Ed. 253, 8
Sup. Ct. Rep. 992, 1257]; *Booth* v. *Illinois,* 184 U. S. 425
[46 L. Ed. 623, 22 Sup. Ct. Rep. 425]; *Otis* v. *Parker,* 187
U. S. 606 [47 L. Ed. 323, 23 Sup. Ct. Rep. 168]; *Ah Sin*
v. *Wittman,* 198 U. S. 500 [49 L. Ed. 1142, 25 Sup. Ct. Rep.
756].

In *Mugler* v. *Kansas* the court went so far as to say that
a state might prohibit the manufacture of intoxicating
liquors by a person for his own use, if in the judgment of
the legislature such a measure is necessary. In *Kidd* v.
*Pearson* the doctrines laid down in *Mugler* v. *Kansas* were
approved and reaffirmed. *Powell* v. *Pennsylvania* directly
presented the question of absolute prohibition, and the deci-
sion was in favor of the measure. That the substance in
question in that case was oleomargarine cannot alter the
principle, because it is conceded that the article was in it-
self useful and not at all harmful. The reason of the prohi-
bition was the great danger of fraud in its being mistaken
for real butter. But there is nothing which is the subject
of so much fraud as the sale of intoxicating liquors. Even
physicians have been prosecuted for giving fraudulent pre-
scriptions in order to assist their "patients" in obtaining
intoxicating liquors unlawfully; and as to the frauds of
druggists in handling liquors, it is said in the *Druggist
Cases,* 85 Tenn. 458 [3 S. W. 490], that the evasions of the
law are frequent and notorious.

In *Booth* v. *Illinois* the court, having under examination
the Illinois statute prohibiting options to buy or sell grain
or other commodities at a future time, said: "The argument
then is that the statute directly forbids the citizen from pur-
suing a calling which in itself involves no element of immor-
ality, and therefore by such prohibition it invades his liberty
as guaranteed by the supreme law of the land. Does this
conclusion follow from the premise stated? Is it true that
the legislature is without power to forbid or suppress a par-
ticular kind of business, where such business properly con-
ducted may not in itself be immoral? We think not. A
calling may not in itself be immoral, and yet the tendency

of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the state thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law."

As having further bearing upon the right which the city would have had to prohibit absolutely the sale of intoxicating liquors for medicinal purposes, reference may be made to the following cases: *State* v. *Fabbri,* 98 Wash. 207 [L. R. A. 1918A, 416, 167 Pac. 133] ; *In re Crane,* 27 Idaho, 671 [L. R. A. 1918A, 942, 151 Pac. 1006] (affirmed in 245 U. S. 304 [62 L. Ed. 304, 38 Sup. Ct. Rep. 98] ) ; *Schmitt* v. *Cook Brewing Co.,* 187 Ind. 623 [3 A. L. R. 270, 120 N. E. 19] ; *Cureton* v. *State,* 135 Ga. 660 [49 L. R. A. (N. S.) 182, 70 S. E. 332] ; *Delaney* v. *Plunkett,* 146 Ga. 547 [Ann. Cas. 1917E, 685, L. R. A. 1917D, 926, 91 S. E. 561] ; *Woods* v. *City of Seattle,* 270 Fed. 315 ; *Page* v. *United States,* 278 Fed. 41 ; *Piel Bros.* v. *Day,* 278 Fed. 223 ; *Falstaff Corp.* v. *Allen,* 278 Fed. 642 ; *Massey* v. *United States,* 281 Fed. 293. Though none of these decisions is directly in point, their reasoning is persuasive and tends to uphold our conclusion.

Of all the cases to which our attention has been called none is so nearly in point as *State* v. *Durein,* 70 Kan. 1 [15 L. R. A. (N. S.) 908, 78 Pac. 152] (affirmed in 208 U. S. 613 [52 L. Ed. 645, 28 Sup. Ct. Rep. 567] ), and *Motlow* v. *State,* 125 Tenn. 547 [L. R. A. 1916F, 177, 145 S. W. 177]. True, much that is said in these cases respecting the right to prohibit the sale of alcoholic liquors as medicines is *dictum.* But the reasoning of the Kansas and Tennessee courts in these cases, even though much of it be *dictum,* is so cogent and logical as to form a solid foundation for the proposition that a city, possessing local police power, may entirely prohibit the sale of alcoholic liquor for a medicinal use.

In *State* v. *Durein* the Kansas court, from whose opinion we shall quote *in extenso,* states in the following forceful language the law which is determinative here: "The commodity in controversy is intoxicating liquor. It is not corn or rye or hops or grapes, or any other product whose cultivation and use ministers to the normal and necessary wants of mankind. . . . But the article is one whose use, even moderately, is taken into account by actuaries of insurance companies, and which bars employment in classes of service involving prudent and careful conduct—an article conceded to be fraught with such contagious peril to society that it occupies a different status before the courts and the legislatures from other kinds of property, and places traffic in it upon a different plane from other kinds of business. There is therefore no question in this case of the power of the legislature to say generally what beverages men shall drink, or what they shall eat or wear, or when they shall rise or retire. The discussion must deal solely with a distinct article of trade, which already has earned a certain measure of reproach among civilized peoples. . . . It is true that intoxicating liquors may be devoted to sacramental, medical, scientific and mechanical uses, all conducive to the welfare of society. But this fact does not remove the stigma which has been fixed upon them. Intoxicating liquor is intoxicating liquor still, whether it be employed before the altar, at the bedside, in the laboratory, in the manufactory or in the saloon. It is still the prolific source of disease, misery, pauperism, vice and crime. Its power to weaken, corrupt, debauch and slay human character and human life is not destroyed or impaired because it may be susceptible of some innocent uses, or may be used with propriety on some occasions. The health, morals, peace and safety of the community at large are still threatened, and, under the form of government established for this state, and for the union of states of which it is a member, those are special subjects of local legislative cognizance. . . . The manufacture and sale of property in itself wholesome and harmless may be entirely prohibited merely to prevent deception and fraud. . . . In *Mugler* v. *Kansas,* 123 U. S. 623 [31 L. Ed. 205, 8 Sup. Ct. Rep. 273, see, also, Rose's U. S. Notes], . . . the private right to manufacture liquor for the producer's own individual use was contended for—

a right of equal rank with that of manufacturing or selling for medical, scientific or mechanical purposes. But the court said: 'It will be observed that the proposition, and the argument made in support of it, equally concede that the right to manufacture drink for one's personal use is subject to the condition that such manufacture does not endanger or affect the rights of others. If such manufacturer does prejudicially affect the rights and interests of the community, it follows, from the very premises stated, that society has the power to protect itself by legislation against the injurious consequences of that business.' . . . It is said, however, that in no case has it been decided that the sale of intoxicating liquors for medical, scientific and mechanical purposes may be entirely prohibited, when that was the question under discussion. But the principles announced are determinative of that question. Power to legislate for the health, morals, peace and good order of society being conceded to the legislature, that body must determine the limits of its exercise, subject only to the condition that the measures adopted are reasonably appropriate to effect its purposes; and upon this question the court will rarely substitute its judgment for that of the legislature. . . . No body of men can be so well informed regarding the composition, character and distribution of the state's citizenship, the origin, habits, customs, culture, and ideals of the people, the modifying influences of their environment, the scope and possibilities of their industries, and all other facts relating to their welfare as a distinct political entity, as representatives of those people chosen from the various localities of the territory concerned. They understand better than any court possibly can the evils chargeable to the presence of intoxicating liquors among their own constituents; they know the extent to which intoxicating liquors are used and may be used by their own people as medicine and in lawful business pursuits; they are able to judge what are and what are not desirable means to desirable ends; and if, in their judgment, high license, low license, local option, state monopoly and all other methods of regulation and restraint are fruitless measures for the protection of the health, morals, peace and safety of the state against the use of intoxicating liquors; if, under the best possible regulations, drug stores or other dispensaries become in fact saloons; if

such records of sales as are made at those places reek with rottenness; if by such expedients the door is merely opened to deception and fraud and perjury; if unpreventable infractions of the best liquor law devisable lead to a general disregard of law and contempt for its enforcement and administration; and if drunkenness still remains common—the legislature may banish the traffic altogether. Whether, as a matter of policy, the legislature ought to go to any such length, the courts have no right to say. That it has the power, under the law, to do so, the courts cannot under the law do otherwise than declare.''

In *Motlow* v. *State, supra,* the Tennessee court, after an exhaustive review of the authorities, state and federal, said that the weight of authority is in favor of total prohibition—a ''Bone Dry'' law—and against the proposition advanced by Freund and some other text-writers to the effect that the legislature does not possess the power to prohibit the prescription and sale of alcoholic liquors for medical use. There the court said: ''The fallacy of the whole argument [the argument that the thing prohibited must be in itself harmful and incapable of a harmless use] is in the assumption that, if an article is useful for any purpose, it cannot be wholly forbidden, no matter how greatly its evil capabilities and actual uses overbalance the good purposes it serves. The legislature is the judge of the times and occasions when public danger threatens, and it is for the courts to apply the test of the constitutional limitations and restrictions, and these must be applied with a careful and discriminating judgment. . . . We are referred to section 223 of Freund's Police Power for the statement that the power of the legislature to prohibit the prescription and sale of liquor to be used as a medicine does not exist, and that the exercise of this power would be purely arbitrary, based upon *Sarris* v. *Commonwealth,* 83 Ky. 327. The legislation in question does not contain that prohibition, because the proviso permits the sale of alcohol which may be used for medicinal purposes. However, the weight of authority is against even this proposition, and in favor of total prohibition, as we shall presently show. Other text writers declare the right of absolute prohibition.''

From the principles underlying the foregoing cases it is apparent that though the sale of alcoholic liquors for medi-

cinal purposes may not be in itself noxious, nevertheless the city of Los Angeles could have prohibited such sales because of the great opportunity afforded thereby for aiding those whose purpose and desire is to violate those provisions of the ordinance which prohibit the sale of intoxicants as beverages. Legislation prohibiting the sale of alcoholic liquor for medicinal use might be repugnant to our sense of justice, or it might even be regarded as unnecessarily oppressive to those desiring to use alcoholic liquor for that purpose; but if that is all which may be said against it, the appeal must be to the legislature or to the ballot-box, not to the judiciary. "This court," says the supreme court of Indiana in *Schmidt* v. *Cook Brewing Co.*, *supra*, "has nothing to do with the wisdom or unwisdom of the legislative act. A law may be repugnant to general principles of justice, liberty, and rights not expressed in the constitution, and yet the courts have no power to strike it down."

In support of his contention that the city does not possess the power to prohibit the prescription and sale of intoxicating liquor to be used as a medicine, petitioner cites us to Freund on Police Power (secs. 222 and 223); Tiedeman on State and Federal Control of Persons and Property (p. 512 of 1900 ed.); *Town of Selma* v. *Brewer*, 9 Cal. App. 70 [98 Pac. 61]; *Commonwealth* v. *Fowler*, 96 Ky. 166 [33 L. R. A. 839, 28 S. W. 786]; *McNulty* v. *Toof*, 116 Ky. 202 [75 S. W. 258]; *Sarris* v. *Commonwealth*, 83 Ky. 327, and *Ex parte Cowert*, 92 Ala. 94 [9 South. 225].

That the opinions of Freund and Tiedeman respecting the power to prohibit the prescription and sale of alcoholic liquor for medicinal purposes are unsound and fallacious is so clearly shown by the Tennessee supreme court in its able and exhaustive treatment of the subject in *Motlow* v. *State*, *supra*, that it would be supererogatory for us to attempt to add to that court's pregnant criticisms.

*Town of Selma* v. *Brewer*, *supra*, presented a question as to the true interpretation of a municipal ordinance. According to the sweeping terms of one of its sections, the ordinance under consideration in that case purported to make the keeping, possessing, or storing of intoxicating liquors unlawful, without any express reference to the disposition to be made of them by the keeper or possessor. In view of other provisions in the ordinance, this sweeping in-

hibition against keeping, possessing, and storing was construed as intended to prohibit the storing or possessing of such liquor with a view to engaging in its unlawful sale. What was said in that case about the lack of power to prohibit the sale of intoxicating liquors for medicinal use was not necessary to the decision and was pure *dictum*. Nor was any attempt made to buttress the *dictum* by the citation of those authorities wherein the courts have discussed the principles of constitutional law which underlie the question. For these reasons we do not accept that decision as authority here. In each of the Kentucky cases cited by petitioner the court upheld the particular statutory provision under which the accused was charged. What was said in those cases respecting the unconstitutionality of an inhibition against the sale of intoxicating liquors for medicinal purposes was, therefore, *dictum* pure and simple, and is not to be taken as authority upon the question before us. The same may be said of the Alabama case cited by petitioner—*Ex parte Cowert*. Like the Kentucky cases, it makes no attempt to sustain its *dictum* by reasoning based on any generally recognized principles of constitutional law applicable to the enactment of prohibitory legislation.

[3] Concluding, as we do, that the city of Los Angeles, had it chosen to exercise the power, might have prohibited in the first instance all sales of alcoholic liquor as a medicine, it cannot be held that the city's restriction upon the filling of prescriptions by pharmacists has been so far augmented by the national prohibition law that it has now become unreasonable and void.

[4] Petitioner's second point is that subdivision c of section 5 of the Gandier ordinance—the subdivision relating to the filling of prescriptions by pharmacists—discriminates unlawfully between the filling of prescriptions for alcoholic liquors and the filling of prescriptions for drugs or other curative agencies. There is no merit in the contention. The ordinance deals only with alcoholic liquors. It is possible that there are ordinances of the city, not placed before us, which regulate in a similar manner the sale of drugs and narcotics. But even if the sale of drugs, poisons and narcotics has not been similarly regulated, the ordinance in question does not arbitrarily discriminate between the sales of such articles and the sale of alcoholic liquors as medicines.

No reasonable person will dispute the proposition that in view of the many evils which are peculiar to the consumption of intoxicating liquors regulations may be made which are specially applicable to the sale thereof. Police laws need not necessarily be *omnibus* in their character; and it is permissible to legislate against one form of evil even though other and similar evils have not been condemned. A person guilty of violating an ordinance regulating or prohibiting an evil of one character cannot complain that evils of a different character but equally pernicious have not been similarly regulated or prohibited. "The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws." (*Soon Hing* v. *Crowley,* 113 U. S. 703 [28 L. Ed. 1145, 5 Sup. Ct. Rep. 730, see, also, Rose's U. S. Notes].) Thus, in *Maguire* v. *Reardon,* 41 Cal. App. 596 [183 Pac. 303], it was held that an ordinance which provides for the general demolition and removal of wooden buildings within the city's fire limits is not open to the objection that it is discriminatory because it does not refer to buildings made of other inflammable material. And in *Philadelphia* v. *Brabender,* 201 Pa. St. 574 [58 L. R. A. 220, 51 Atl. 374], it was held that an ordinance which prohibits the casting of handbills and advertisements into the vestibules of dwellings, although excepting newspapers and addressed envelopes, does not impair equal rights or make an unlawful discrimination. (See, also, *Butte* v. *Paltrovich,* 30 Mont. 18 [104 Am. St. Rep. 698, 75 Pac. 521], and *Ex parte Hadacheck,* 165 Cal. 416, 422 [L. R. A. 1916B, 1248, 132 Pac. 584]; affirmed in 239 U. S. 394 [Ann. Cas. 1917B, 927, 60 L. Ed. 348, 36 Sup. Ct. Rep. 143, see, also, Rose's U. S. Notes].)

[5] It next is urged that the main purpose of the Gandier ordinance was to permit or legalize the sale of certain kinds of intoxicating liquors for beverage purposes, such as light wines and beers; that the legalization of the sale of these alcoholic liquors for beverage purposes has been rendered invalid by the eighteenth amendment and the Volstead Act; that subdivision c of section 5 of the ordinance

was intended to be but an auxiliary provision—a mere incident to the authorization of the sale of beers and wines; and that this auxiliary provision would not have been enacted as a separate and independent regulatory measure, but only as an incident to what counsel are pleased to declare is the main purpose of the ordinance. From these premises it is argued that because what counsel claim was the main purpose of the ordinance—the legalization of the sale of light wines and beers—has been made illegal by the eighteenth amendment and the Volstead Act, the whole ordinance has become a nullity, and the auxiliary provision contained in subdivision c of section 5 falls with the rest. There is no merit in the contention.

One vice of petitioner's argument lies in the assumption that the main purpose of the ordinance was to *legalize* the sale of certain kinds of liquors—light wines and beers. On the contrary, its main purpose seems to have been prohibitory. In section 1 of the ordinance it is expressly declared that "it shall be unlawful to establish, maintain or conduct within the city of Los Angeles any . . . place in which, or in connection with which, alcoholic liquor is sold, served or given away, except as hereinafter provided." Section 2 provides that it "shall be unlawful to sell, serve or give away any alcoholic liquor within the city of Los Angeles, except as hereinafter provided." Section 5 provides that nothing in the preceding sections "shall be construed as rendering unlawful" any of the following acts: The service of alcoholic liquors in private homes; the use of wine for sacramental purposes; the filling of prescriptions at pharmacies; the sale of pure alcohol by registered pharmacists for scientific or medicinal purposes; the sale between specified hours "of not less than one-fifth of a gallon of vinous and malt alcoholic liquors in sealed or corked containers or closed packages" at any place within a certain designated zone, provided the same shall not be consumed on the premises where sold; and the service of vinous and malt alcoholic liquors with *bona fide* meals at a club, restaurant or hotel, the proprietor whereof holds a valid license. In section 9 it is provided that the term "vinous and malt alcoholic liquors" shall include all malted and fermented liquors which do not contain more than fourteen per cent by vol-

ume of alcohol, and which do not contain any distilled spirits.

It will be noticed that the ordinance nowhere says that it shall be "lawful" to sell vinous or malt alcoholic liquors, or any kind of intoxicating liquor. What the ordinance. does say is that the general and sweeping prohibitory provisions in sections 1 and 2, banning traffic in all alcoholic liquor, shall not be construed as rendering "unlawful" the specifically designated exceptions to those comprehensive prohibitory provisions. In other words, without intending affirmatively to *legalize* the sale of any intoxicating liquor, the ordinance, read as a whole, makes it unlawful to sell any but certain specified kinds of liquors or liquors used for certain defined purposes. Prohibition of traffic in certain kinds of strong drink is the principal object sought by the ordinance. The only criticism which might be made is that while prohibition is the ordinance's main purpose, its inhibitions do not cover all of the zone now occupied by the eighteenth amendment and the Volstead Act. That, however, does not affect the validity of the ordinance's prohibitory features, nor does it affect such of its regulatory provisions as are not in conflict with the eighteenth amendment or the Volstead Act. Every inhibitory provision of the ordinance, including that which forbids the filling of a medical prescription calling for more than eight ounces of alcoholic liquor, may stand without obstructing or embarrassing the execution of the act of Congress. Thus, for example, the city could inflict the penal sanctions of the ordinance upon pharmacists who fill prescriptions calling for more than eight ounces of liquor without in anywise interfering with the authority of the federal officials to invoke the penalties prescribed by Congress if these same pharmacists should aid and abet a physician in violating that provision of the national law which makes it unlawful to prescribe for the same person more than one pint of intoxicating liquor in any period of ten days. The state, or a political subdivision thereof, in the exercise of the police power which is inherent in the state and preserved to it by the tenth amendment to the federal constitution, and the federal government, in the exercise of the delegated power which it derives from the eighteenth amendment, may each enact laws to secure prohibition, with the one limitation that

no legislation can give validity to acts prohibited by the eighteenth amendment. Each may exercise an independent judgment in selecting and shaping measures to enforce prohibition. These measures may vary in many particulars, but is an inseparable incident of independent legislative action in distinct jurisdictions. (*United States* v. *Lanza,* 260 U. S. 377 [67 L. Ed. 314, 43 Sup. Ct. Rep. 141].)

[6] It also is urged that those provisions of the ordinance which declare that the sale of wines and beers shall not be unlawful—permissive provisions which were nullified by the eighteenth amendment and the Volstead Act—are so intimately interwoven with the other provisions of the ordinance that it must be assumed that the electors who voted for this initiative measure intended that the whole ordinance should fall if its provisions permitting the sale of wines and beers should subsequently be nullified by the paramount power of the federal government. We can see no merit in the contention. This is not a case where some parts of a whole statute or of a whole ordinance were beyond the legislative power when originally enacted. Where some substantial part of a law is unconstitutional and void when the law is first enacted, the rule is that the whole statute or the whole ordinance will fall if all of its parts are so mutually connected with and dependent on each other as to warrant the belief that the lawmakers intended them as a whole and that if all could not be carried into effect the residue would not have been passed independently. That rule is not applicable here. When this ordinance was adopted all of its provisions were valid and strictly within the constitutional power of the city and of the electors who voted upon it as an initiative measure. As was said by the Massachusetts supreme judicial court in *Commonwealth* v. *Nickerson,* 236 Mass. 281 [10 A. L. R. 1583, 128 N. E. 282], addressing itself to a similar proposition: "It [the state statute] was all operative and valid, and strictly within the constitutional power of the legislature when enacted. The point now is to ascertain whether the parts under which the present complaint is brought still remain valid and enforceable. This point is not the same which would arise where a whole statute has been enacted, some parts of which are beyond legislative power under then existing constitutional provisions."

The rule that the whole statute will fall if, when passed, some of its parts are unconstitutional and if all of its parts are so dependent upon each other as to warrant the belief that the legislature intended them as a whole, rests upon the presumed intent of the lawmakers. But here the intent of those who made this ordinance a city by-law must be ascertained as of the time when they voted for its adoption. At that time this initiative measure, in all of its parts, was a valid expression of the electors' legislative will and intent. Then the ordinance was altogether impregnable in its constitutional aspects, and there was then a complete and valid expression of the intent of the lawmakers. The precise question, therefore, is: How much of a statute or of an ordinance, perfectly valid throughout at the time of its adoption, remains enforceable when, since its adoption, a superior power has supervened with a fundamental governing law at variance with some of its terms? Such a situation is analogous to that where, after the passage of some perfectly valid and enforceable law, a change takes place in the conditions obtaining in the field of the law's activities, such, for example, as a change in certain physical facts, so that the practical enforcement of the law in all of its aspects is no longer a physical possibility. Such supervening alteration in the law's environment might afford a reason for its repeal by the law-making body or a reason for its amendment to conform to the altered conditions, but it can afford no ground for judicial repeal.

The principle declared in *In re Rahrer*, 140 U. S. 545, 564, 565 [35 L. Ed. 572, 11 Sup. Ct. Rep. 865, see, also, Rose's U. S. Notes], is applicable here. There it was held that a state statute, invalid at the time of its enactment for the reason that it infringed upon the federal power, was rendered valid and enforceable without re-enactment simply by the subsequent passage of an act of Congress removing an impediment to the enforcement of the state law and thus conferring jurisdiction in that particular upon the states. That decision upholds this ordinance to the extent to which we have decided it to be operative. In *Commonwealth* v. *Nickerson*, *supra*, will be found a logical and convincing discussion of this question. (See, also, *Ex parte Pappas*, 57 Cal. App. 432 [207 Pac. 483].)

[7]   Petitioner's final point is based upon a recent decision of the Florida supreme court—*Hall* v. *Moran*, 81 Fla. 706 [89 South. 104]. Because the Volstead Act expressly permits physicians to prescribe for any one person one pint of spirituous liquor in any period of ten days, petitioner claims that there is thereby granted by Congress to citizens of the United States a "right" or a "privilege" which is protected by the fourteenth amendment, and that no state or political subdivision thereof may abridge such right or privilege.   The decision of the Florida supreme court in *Hall* v. *Moran, supra,* seems to lend support to this proposition.   We are unable to agree with the reasoning of that case.   Because the Volstead Act declares that "it shall not be unlawful to possess liquors in one's private dwelling" for personal consumption by the owner, his family and guests, the Florida court held that permission was given by Congress to possess liquors, and that such permission confers "a federal *right* in the nature of a 'privilege' to lawfully possess, and an 'immunity' from punishment for such lawful possession"; and that a state statute making it unlawful for anyone to have in his possession more than a certain defined quantity of liquor is a denial or curtailment of the "right" so conferred by Congress, and perhaps is also a violation of that provision of the fourteenth amendment which declares that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

The vice of this argument, as we view it, lies in its assumption that Congress may grant the "right" to possess intoxicating liquors.   The eighteenth amendment—the sole source of the power of Congress to deal directly with the liquor traffic—is a prohibitory, not a permissive, amendment.   It declares that "the manufacture, sale or transportation of intoxicating liquors . . . for beverage purposes is . . . *prohibited*"; and by the second section of the amendment Congress is given power to enforce such national prohibition by appropriate legislation.   There is here no grant to Congress of the power to create or confer any "right" to possess intoxicating liquors.   The sole power granted to Congress is the power to enforce the federal *prohibition* contemplated by the amendment.   In the exercise of its power to prohibit the manufacture, sale and trans-

portation of intoxicating beverages, Congress unquestionably may regulate the possession of such liquors for private use, since the regulation of such possession has a substantial relation to the enforcement of the prohibition aimed at by the amendment. (*Page* v. *United States, supra.*) But its power so to regulate the possession of liquors is but an incident to its power to prohibit. Its power to regulate possession for private use exists solely because such regulation of possession is an appropriate means whereby the expressly granted power to prohibit the manufacture, sale, and transportation may be effectively carried into execution. So far from being the grant of a right, the congressional regulation of possession is a limitation upon right or privilege. It is a limitation upon that privilege of possessing liquors which, but for the federal regulation, would be unlimited, save in so far as it might be limited by state legislation. It is absurd to say that Congress, merely because it has the power to regulate the possession of intoxicating beverages as an incident to its expressly granted power to prohibit their manufacture, sale, and transportation, *confers* a "right" when, by appropriate regulatory provisions, it places limitations upon the privilege of possessing liquors.

We quite agree with the ruling of Judge Neterer in *Woods* v. *City of Seattle, supra* (270 Fed. 315), where it was held that the eighteenth amendment and the National Prohibition Act confer no right to sell Jamaica ginger in quantities not prohibited by the act, but were intended as limitations upon the privilege, and that, therefore, a state, under its police power, can prohibit sales in such quantities as are permitted by the National Prohibition Act. That was a case brought by a duly registered druggist to enjoin the defendants from interfering with the sale of Jamaica ginger, the sale whereof was made unlawful by a city ordinance. Under a regulation of the commissioner, authorized by the National Prohibition Act, druggists are permitted to sell Jamaica ginger in quantities exceeding one or two ounces at a time. In the course of his opinion Judge Neterer says: "The plaintiff asserts that article 18, *supra,* [the eighteenth amendment] and the National Prohibition Act grant him a right to do except that which is prohibited, and that this right overrides all police power of the state with relation to intoxicants. In this plaintiff is in error. Instead of

granting a right, the amendment and the Volstead Act are limitations upon privilege.''

The writ is discharged and the petitioner is remanded.

Craig, J., concurred.

WORKS, J.—I concur in the judgment, but I am not in accord with the views expressed by the majority opinion in making disposition of the first point discussed therein. Considering the importance of the question mentioned, it is proper that I should state the grounds upon which I decline to concur in those views, presenting them in outline only and not with the assiduity which characterizes the treatment of the subject in the majority opinion. I shall then state with great brevity the reasons which impel me to concur in the judgment.

If any proposition of law is well settled, in most jurisdictions, at least, it is that every person has the constitutional right to resort to such established and legalized school or system of healing as he pleases for relief from his ailments. When men differ in opinion merely as to the efficiency of different schools or systems, it is not a proper subject of legislation to attempt to control or limit the right of any to act pursuant to his opinions or beliefs by resorting to the school or system of his choice (*Eastman* v. *State*, 109 Ind. 278 [58 Am. Rep. 400, 10 N. E. 97]; *State* v. *Liffring*, 61 Ohio St. 39 [76 Am. St. Rep. 358, 46 L. R. A. 334, 55 N. E. 168]; *State* v. *Biggs*, 133 N. C. 729 [98 Am. St. Rep. 731, 64 L. R. A. 139, 46 S. E. 401]; *State* v. *Smith*, 25 Idaho, 541 [138 Pac. 1107]; Bishop on Statutory Crimes, sec. 988a; Freund on Police Power, sec. 16. As having a general bearing upon the question, see, also, *State* v. *Gravett*, 65 Ohio St. 289 [87 Am. St. Rep. 605, 55 L. R. A. 791, 62 N. E. 325]; *Louisiana State Board* v. *Carpentier*, 140 La. 405 [73 South. 248]; *American School* v. *McAnnulty*, 187 U. S. 94 [47 L. Ed. 90, 23 Sup. Ct. Rep. 33, see, also, Rose's U. S. Notes]). This principle has found frequent expression, not only in the cases cited, but in others, at the suit of the homœopath, the eclectic, the osteopath, the chiropractor, and the Christian Scientist.

A necessary corollary to the proposition just stated, so it seems to me, is that one may not be deprived, constitution-

ally, of his right to have alcoholic beverages prescribed for him as a medicine. If one may resort, without fear of legislative interference, to the duly qualified practitioners under the system in which that one believes, it must be true that he is also entitled, without fear of such interference, to use the medicines which his practitioner prescribes, as well as to submit himself to the rubbings or massage, or insist upon the benefit of the prayers, which are a part of the practitioner's system. Of what value is the patient's right to resort to the practitioner if he may be denied the services of the latter after he is called? Of what value is that right if the patient may be denied the medicines which the practitioner prescribes for his relief, whether alcohol or hot water? It appears to me, at least so far as the expressions of the majority opinion to the contrary are concerned, that a patient must have the constitutional right to resort, without stint or limitation, except as imposed by the practitioner in his prescriptions, to the medicine in which the school of the honest and qualified physician believes.

I am, therefore, impelled to the view that certain authorities which the majority opinion discredits are closer to the instant case than are those which it follows. The authorities which I have in mind are the ones to the effect that the legislative department may not prohibit the prescription and sale of intoxicating liquor as a medicine (see *Sarrls* v. *Commonwealth*, 83 Ky. 327; *Commonwealth* v. *Fowler*, 96 Ky. 166 [33 L. R. A. 839, 28 S. W. 786]; *McNulty* v. *Toof*, 116 Ky. 202 [75 S. W. 258]; *Ex parte Cowert*, 92 Ala. 94, [9 South. 225]; *Town of Selma* v. *Brewer*, 9 Cal. App. 70 [98 Pac. 61]; Freund on Police Power, secs. 222, 223; Tiedeman on State and Federal Control of Persons and Property, sec. 122). It is clear to me that, if these authorities state the law, it logically follows that the amount to be sold cannot be limited by legislation. If it be conceded that the physician may prescribe and the patient use a certain drug, it must be true that the physician must be allowed a free and untrammeled judgment to determine the quantity to be prescribed and used. If he may not exercise that judgment the patient is deprived of his services, for if in the opinion of the physician a given quantity of any drug is necessary to a healing, for him to be forced to prescribe less were as if he were forbidden to prescribe at all.

Notwithstanding all that I have said above, there are at least two decisions of the supreme court which appear to me to preclude the application of the principles to which I have referred. They are *Abeel* v. *Clark,* 84 Cal. 226 [24 Pac. 383], and *French* v. *Davidson,* 143 Cal. 658 [77 Pac. 663], and they establish the rule that compulsory vaccination laws are constitutional. There are certain differences between those cases and the one now before us, but it does not appear to me that the differences are such as to render the cases inapplicable here. It is upon those two cases alone that I base my present concurrence.