BISHOP, J.
We are required to consider the provisions of ordinance 1971 of the city of Pasadena as applied in a complaint charging respondent with its violation. So far as pertinent to the questions raised, the ordinance, adopted in 1922, reads as follows: “It shall be unlawful for any person ... to sell . . . any spirituous, vinous, malt or other alcoholic liquor within the city of Pasadena.” To the complaint, charging that respondent, on April 13, 1933, “did wilfully and unlawfully sell alcoholic liquor” in the city of Pasadena, she interposed a demurrer. An *Supp. 791 order was made sustaining the demurrer; from this order the People appealed. We are of the opinion that the complaint stated a public offense and that it was error to sustain the demurrer.
Section 22, recently added to article XX of our state Constitution, does not influence this case. Assuming, without deciding, that when that section becomes operative the ordinance may no longer be enforced, because all control will be in the state as distinguished from its political subdivisions, it is plain that the section is not yet operative. By its own terms two conditions must concur before it becomes effective: “in the event” the Wright Act is repealed, “and if and when it shall become lawful under the Constitution and laws of the United States to manufacture, sell, purchase, possess or transport intoxicating liquor for beverage purposes within the United States”. The first event has taken place, but until the repeal of the eighteenth amendment to the federal Constitution, the second condition will not be satisfied, for by that amendment the manufacture, etc., of intoxicating liquor for beverage purposes is prohibited. For the present, then, section 22, article XX, of the state Constitution, has no effect whatever, and a city may still without its limitations “make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws”. (Sec. 11, art. XI, State Const.)
Respondent contends that the ordinance is invalid because it fails to define what is meant by “any . . . alcoholic liquor”, with the result that it prohibits entirely any alcoholic content, even though harmless, or else it is too uncertain to be enforceable. No one, we venture, would have thought of making such contentions when this ordinance was adopted. More immediate familiarity with the Wright Act and kindred statutes which define “intoxicating liquor” by its alcoholic content, measured in fractions of a per cent, must not make us blind to the fact that for years our various legislative bodies and courts knew the meaning of “spirituous, vinous and malt liquor” and “spirituous, vinous and malt alcoholic liquor”, without a statutory definition, for they were words in common use and needed no defining.
The first definition of the word “liquor” as given in the andard Dictionary in 1911 was: “any alcoholic or *Supp. 792 intoxicating liquid”. In the 1924 edition of the same work we find added: “specif., one of a spirituous character as distinguished from beer, Avine, etc.” In Webster’s International Dictionary (1892) “liquor” is first defined as any liquid substance, etc., then “Specifically, alcoholic or spirituous fluid, either distilled or fermented, as brandy, wine, whiskey, beer, etc.” But little uncertainty, then, would have resulted if the ordinance had prohibited the sale of “liquor”, using the A?ord without qualifying terms; no uncertainty at all is to be found in the words which were used, “spirituous, vinous, malt or other alcoholic liquor”.
Our attention has been called to no California case and our research has uncovered none where the meaning of such a group of words is discussed. The absence of discussion is itself a forceful argument that there is no uncertainty in their moaning, for we find an abundance of cases discussing the validity and application of ordinances and statutes employing them. In Ex parte Campbell, (1887) 74 Cal. 20 [15 Pac. 318, 5 Am. St. Rep. 418], an early ordinance of the city of Pasadena was held valid which made it a misdemeanor to maintain a place “where spirituous, vinous, malt, or mixed liquors are sold or given away”. For other cases where similar provisions were discussed (the adjective “alcoholic” not being used) as though the courts knew what the words meant, see: In re Stuart, (1882) 61 Cal. 374; Ex parte Benninger, (1883) 64 Cal. 291 [30 Pac. 846]; In re Guerrero, (1886) 69 Cal. 88 [10 Pac. 261]; In re Lawrence, (1886) 69 Cal. 608 [11 Pac. 217]; County of Amador v. Kennedy, (1886) 70 Cal. 458 [11 Pac. 757] ; Ex parte McNally, (1887) 73 Cal. 632 [15 Pac. 368]; Ex parte Mansfield, (1895) 106 Cal. 400 [39 Pac. 775] ; Ex parte Seube, (1897) 115 Cal. 629 [47 Pac. 596]; Ex parte Fedderwitz, (1900) 6 Cal. Unrep. 562 [62 Pac. 935] ; John Rapp & Son v. Kiel, (1911) 159 Cal. 702 [115 Pac. 651] ; Guzzi v. McAlister, (1913) 21 Cal. App. 276 [131 Pac. 336]. No more difficulty was encountered when the adjective “alcoholic” was inserted before the word “liquors”. For example, in Ex parte McClain, (1882) 61 Cal. 436 [44 Am. Rep. 554], our Supreme Court held section 172 of.the Penal Code constitutional, which prohibited the sale, in the neighborhood of certain state institutions, of “any vinous or alcoholic liquors”. In Golden & Co. v. *Supp. 793 Justice’s Court, (1914) 23 Cal. App. 802 [140 Pac. 60], full effect was given to a county ordinance prescribing a penalty for soliciting orders for the sale or delivery of “alcoholic liquors”. A similar freedom from doubt as to the meaning of alcoholic liquor appears in Ex parte Sweetman, (1907) 5 Cal. App. 577 [90 Pac. 1069] ; Golden & Co. v. Justice’s Court, supra; Matter of Ellsworth, (1913) 165 Cal. 677 [133 Pac. 272]; Giddings v. Board of Trustees, (1913) 165 Cal. 695 [133 Pac. 479]; In re Pappas, (1922) 57 Cal. App. 432 [207 Pac. 483].
In addition to the various ordinances and statutes reviewed in the cases listed, we find that it was quite common for city charters to employ the words “alcoholic liquors”, without definition, as descriptive of that which they wished to prohibit or regulate. Note the following: city of Long Beach, Statutes of 1907, page 1237; city of Palo Alto, Statutes of 1909, page 1193; city of Pomona, Statutes of 1911, page 1940 (and 1955); city of Pasadena, Statutes of 1913, page 1469; city of Alhambra, Statutes of 1915, page 1776 (and 1798); city of Alameda, Statutes of 1917, page 1780. If the ordinance under review is too indefinite to be valid legislation, then these charter provisions have had no validity. We are of the opinion that the ordinance was not, because of the uncertainty of its meaning, invalid when adopted, nor do we believe that the words “spirituous, vinous, malt or other alcoholic liquor” have become so obsolete during the years since the passage of the ordinance that its provisions have become uncertain.
Respondent also attacks the ordinance on the ground that it was in conflict with the Wright Act, a general state law which prohibited all that the ordinance frowns upon. Respondent is in error in stating that the Wright Act was in effect when the ordinance was adopted. While it is true that the Wright Act was passed by the legislature in its 1921 session, before the adoption of the ordinance in March, 1922, a referendum held up the state law so that it did not become effective until December, 1922. (See In re Brambini, (1923) 192 Cal. 19, 22 [218 Pac. 569].) When adopted, therefore, the city ordinance was a lawful exercise of the city police power. (Ex parte Campbell, supra; In re Hixson, (1923) 61 Cal. App. 200 [214 Pac. 677].) Conceding that during the life of the Wright Act the ordinance in question could not have been enforced, *Supp. 794 because in conflict with that general law (People v. De Ferrari, (1923) 63 Cal. App. 671 [219 Pac. 1048]), this conflict has been removed by the repeal of the state statute, and there is no reason why the ordinance is not now fully effective. It cannot be said that the ordinance was repealed. It is at least doubtful if the legislature could repeal a city ordinance. Moreover, as was stated in In re Iverson, (1926) 199 Cal. 582, 588 [250 Pac. 681, 683], “There is nothing in the act (Wright Act) from which an intention can be inferred to repeal by implication any ordinance in existence at the time of its adoption.” If, as we have noted, the ordinance was valid when passed and has not been repealed, then the removal of tire general law which suspended its enforcement operated to revive the ordinance.
Analogous situations are not unknown; cases dealing with them are instructive. In Byrne v. Drain, (1900) 127 Cal. 663 [60 Pac. 433], the court was considering the contention that certain provisions of a city charter were without effect. It was admitted by all parties that, when adopted, the charter provisions were good. It was also conceded that thereafter the passage of a general law on the subject covered by the charter provisions rendered them inoperative. This was so because of the constitutional declaration that “all charters . . . shall be subject to and controlled by general laws”. The problem under discussion arose from the fact that the Constitution was amended in 1896 by inserting before the words “shall be subject to” this expression: “except in municipal.affairs”. It was held that while the provision under review (dealing with municipal affairs) had been suspended by the general law with which they conflicted, they became effective with the 1896 amendment removing the controlling influence of the general law. In its discussion our Supreme Court called attention to Seattle Coal & Transp. Co. v. Thomas, (1881) 57 Cal. 197, where it was held that the state’s insolvency statute, without force while the federal bankruptcy laws were on the books, became effective with the repeal of the federal law. Also it was pointed out that in the case of treaties between the United States and foreign countries, state laws in conflict therewith are not abrogated or repealed, but suspended during the life of the treaties. (See, also, City of Santa Barbara v. Eldred, (1892) 95 Cal. 378 [30 Pac. 562].)
*Supp. 795 We have considered this case, as it was presented to ns, on the merits. We .believe we were warranted in doing this in spite of the uncertainty that exists with reference to the right of the People to appeal, due to the fact that that right is given by a cross-reference (sec. 1466, Pen. Code) to sections fitted to superior court and not justice court practice. (Sec. 1238, Pen. Code.) There is no provision made in justice court procedure for a demurrer to the complaint (see sec. 1425 et seq., Pen. Code). (Brown v. Superior Court, (1887) 72 Cal. 14 [13 Pac. 70]; People v. Rosenbloom, (1931) 119 Cal. App. (Supp.) 759 [2 Pac. (2d) 228].) However, it was stated in Brown v. Superior Court, supra, that where a demurrer is presented and erroneously sustained, in a justice’s court, on appeal the order should be reversed with directions to overrule the demurrer. An order sustaining a demurrer, whether it is properly filed or not, is, in effect, a judgment, for it is a final adjudication of the case against the prosecution. (People v. Ah Own, (1870) 39 Cal. 604; People v. Jordan, (1884) 65 Cal. 644 [4 Pac. 683].) People v. Apple, (1922) 57 Cal. App. 110 [206 Pac. 487], does not disturb this conclusion, for there the court was dealing with such an order in the superior court where further proceedings are authorized before the determination becomes final. (See, also, People v. Garcia, (1931) 120 Cal. App. (Supp.) 767 [7 Pac. (2d) 401].)
Because of the inapt language adopted by the cross-reference authorizing appeals (sec. 1466, Pen. Code) a liberal interpretation of the terms of section 1238 of the Penal Code, to which reference is made, should be followed (People v. Yates, (1931) 114 Cal. App. (Supp.) 782, 790 [298 Pac. 961]), as has been the policy in cases involving cross-reference to sections referring to the manner of taking appeals and the record on appeals. (Garrett v. Superior Court, (1926) 79 Cal. App. 273 [249 Pac. 871] ; Lillywhite v. Superior Court, (1926) 80 Cal. App. 533 [251 Pac. 945].) We are of the opinion, therefore, that the present appeal by the People from the order sustaining respondent’s demurrer to the complaint presents the merits of the ruling to us.
It is ordered, therefore, that the order appealed from be reversed, with directions that the demurrer be overruled.
McLucas, P. J., and Fox, J., concurred.