[S. F. No. 1596.   Department Two.—June 9, 1899.]

THE PEOPLE, Respondent, v. W. J. HILL, Appellant.

Municipal Election—Closing of Polls—Construction of Charter.—In a city charter providing that all the provisions of law regulating elections for state and county officers shall apply so far as practicable to elections under the charter, and providing further specifically that the polls shall be opened at such hour as may be designated by the mayor and common council in the notice of election, but in no case later than 2 o'clock P. M., and that they shall not be closed until sundown, the special provision for the time of closing of the polls will prevail over a general provision of the election laws referred to for closing polls at state and county elections at 5 o'clock P. M.

Id.—Conflict between Special and General Law.—The charter being a law for a special case, is not in conflict with the general law providing otherwise; and an intent that the general law shall supersede the charter provision as to the time for closing the polls cannot be inferred from a general law which by its terms is applicable to state and county elections only, and which is only made applicable generally so far as practicable by the same charter which specially provides differently therefrom, as to the time of opening and closing of the polls at municipal elections.

Id.—Election of Mayor—Premature Closing of Polls—Rejection of Vote of Wards.—In determining the election of a mayor, under a charter providing for keeping open the polls until sundown, the vote of wards which closed the polls at 5 P. M. is properly rejected, although the majority of the voters of the city are

thereby disfranchised. The election in such wards is to be treated as illegal and void, and as if no election was held therein; and the vote in a remaining ward, in which the polls were closed at sundown, must determine the election.

APPEAL from a judgment of the Superior Court of Monterey County. M. T. Dooling, Judge.

The facts are stated in the opinion of the court.

S. F. Geil, C. F. Lacy, and J. W. Bryan, for Appellant.

It was the intention of the legislature that the general election law should control, and the change therein should be held to control any contrary provision of the charter. (*Kirk v. Rhoads*, 46 Cal. 398; *Staude v. Election Commrs.*, 61 Cal. 315; *People v. Henshaw*, 76 Cal. 436; *Thomason v. Ashworth*, 73 Cal. 73; *Anderson v. De Urioste*, 96 Cal. 405; *Santa Cruz v. Enright*, 95 Cal. 111; *Davies v. Los Angeles*, 86 Cal. 37.) An election is not a "municipal affair" within the meaning of the amendment of 1896 to section 6 of article XI of the constitution. (Compare Const., art. IV, sec. 25, subd. 9.) The judgment declaring a candidate elected, who received a minority of the votes cast, is erroneous. The case is no different in principle from one where the person receiving a majority of the votes proves ineligible. His having received a majority of the votes precludes the court from declaring his antagonist elected. (*Saunders v. Haynes*, 13 Cal. 145; *Searcy v. Grow*, 15 Cal. 118; *Crawford v. Dunbar*, 52 Cal. 36; *People v. Rodgers*, 118 Cal. 396; *State v. Giles*, 2 Pinn. 166; 52 Am. Dec. 149.)

William F. Fitzgerald, Attorney General, and Renison & Jones, for Respondent.

The charter necessarily implied that any provisions of the general election laws inconsistent with the special provisions of the charter were not applicable. (Rapalje and Lawrence's Law Dictionary, ed. 1888, 1102; *Christy v. Board of Supervisors*, 39 Cal. 3; Endlich on Interpretation of Statutes, sec. 223; *Crosby v. Patch*, 18 Cal. 439; *Pennie v. Reis*, 80 Cal. 269.) The general election laws are not by their terms applicable to municipal elections, and do not control the special provisions of the municipal charter. (*Wood v. Election Commrs.*, 58 Cal. 561.) Under the

constitutional amendment of 1896, no general law can control a city charter in respect to "municipal affairs." (Const., art. XI, sec. 6.) The deviation from the legal time of closing the polls being substantial, and it being impossible to tell what would have been the result of the vote in the wards prematurely closing the polls, if they had been kept open for the legal time, the vote in those wards is illegal and void, and must be rejected. An election in a precinct or ward which is a nullity can have no legal effect whatever. (*People v. Seale*, 52 Cal. 71; *Directors etc. Dist. v. Abila*, 106 Cal. 365; *Tebbe v. Smith*, 108 Cal. 101, 111, 112; 49 Am. St. Rep. 68; *Atkinson v. Lorbeer*, 111 Cal. 419, 422, 423; McCrary on Elections, 4th ed., 127, 128.) A minority of legal votes will prevail against any number of illegal votes actually cast. (*Commissioners v. Read*, 2 Ashm. 261; *People v. Board of Canvassers*, 129 N. Y. 395.)

TEMPLE, J.—This action is for usurpation of the office of mayor of Salinas City. The city was reincorporated by special act of the legislature passed in 1876. In section 5 of that act it is provided as to municipal elections, among other things, that "all provisions of law regulating elections for state and county officers shall apply, as far as practicable, to elections under this charter. The polls for all elections shall be opened at such hour as may be designated by the mayor and common council in giving notice of said election; provided, that the hour for opening the polls shall in no case be later than the hour of 2 o'clock P. M., and the polls shall not be closed until sundown of the same day."

A municipal election was held on the 14th of March, 1898, at which Francee, at whose instance this suit was brought, and Hill, defendant, were candidates. The proclamation calling the election directed that the polls should be opened at sunrise and closed at sundown. The general election law for state and county officers directed that the polls shall be closed at 5 P. M. There are three wards in the city. In two they followed the state law and closed the polls at 5 o'clock P. M., which was found to be one hour and six minutes before sundown. Counting the votes from all the wards Hill would have a majority of twenty-four, and he was declared elected by the council.

Rejecting the votes cast in wards 1 and 2 as illegal, Francee would be elected by a majority of twenty-two, and this conclusion was reached by the trial court and Hill takes this appeal.

It is contended by the appellant that the language of the section providing that so far as practicable the general election law shall apply, indicates the intent that the general law should govern all city elections. If this were so, it is difficult to see why anything was said in the charter about the time for opening and closing the polls, and in regard to many other things mentioned in section 5. It is suggested that it was intended to provide that the polls need not be opened until 2 o'clock P. M., but to make no change as to the hour of closing, for then the general law directed that the polls be closed at sundown, which time was afterward changed to 5 o'clock P. M., and, we may add, might be changed to 2 o'clock P. M. But it seems perfectly manifest that the permission given to the council by its proclamation to fix a later hour for the opening of the polls than that fixed in the general law, and the requirement that the polls must not be closed before sundown, are parts of the same provision. The absolute requirement is because of the power given the board to delay opening the polls. Where but few votes would be cast it is not necessary that the polls should be kept open all day, but it is a wise provision which directs that, even then, voters may know that at all events the polls will be kept open for a certain designated portion of the day.

Even if this were not so, there is no more ground for holding that the provision that the council may designate a different time for opening the polls than that fixed by the general law shall stand as an exception, than that the imperative requirement of the charter that the polls shall not close before sundown shall exist as an exception, notwithstanding the general law. As already stated, both are coupled with the provision making the general law applicable, and are purposeless if notwithstanding the general law is to control in such matters; for the general election law must always provide for opening and closing the polls.

The charter being a law for a special case is not in conflict with a general law which provides otherwise. Even a general law subsequently passed does not repeal laws expressly made

for special cases, unless an intent that the general law shall have such effect is manifested in some mode in the general law. This intent may be shown in various ways, but assuredly cannot be found in a statute which is expressly made applicable to state and county elections only. The decisions rendered in *Staude v. Election Commrs.*, 61 Cal. 313; *Thomason v. Ashworth*, 73 Cal. 73; *People v. Henshaw*, 76 Cal. 436, and other cases cited, have no bearing whatever upon this matter. In those cases the statutes expressed a design to control and repeal the special laws, and the only questions considered were as to the power of the legislature to pass such laws—not as to the construction of the statutes. Here it is the charter which makes the general law applicable so far as it is so, for in form and words the general law excludes the idea that it has any application to the charter election. Provision in a statute for a special case is not deemed repugnant to the general law, but an exception. But as the general law is in terms not applicable to this particular case, and the attempt is to show that it is expressly made applicable by the special law, neither the decisions cited nor the rule of interpretation are of consequence here.

It is said that under the ruling a majority of the voters are disfranchised, and that under such circumstances no one should be declared elected. No authority is cited for this proposition, and clearly it is for the legislature to determine the effect of such a failure. Whichever way the rule is made unscrupulous managers can take advantage of it to defeat the popular will— if they are permitted so to do. It is not like the case where a majority of votes are cast for one who is ineligible. There the votes are legally cast and counted, but a person has been elected who is not qualified to serve, and it is also true that the opposing candidate did not receive a majority of the legal votes. There the votes may be canvassed and full return made of the result, which will be received and counted, but in this case the election in the offending precincts is declared void and no election was held therein. There are, therefore, no returns to canvass.

The judgment is affirmed.

McFarland, J., and Henshaw, J., concurred.