[No. 49.   Third Appellate District.—September 22, 1905.]

## CITY OF MARYSVILLE, Appellant, v. COUNTY OF YUBA, Respondent.

Municipal Corporations—Special Charter Referring to General Laws—Amendments—Fines in Police Court under State Laws—Payment to County Treasurer.—The disposition of fines for misdemeanors imposed by a police judge under the state law in a municipal corporation chartered by special act prior to the constitution of 1879, and charter of which referred to the general law for its powers and duties, is not to be determined merely by the general law as it then stood, but is to be governed by existing amendments to such general law, providing that all such fines shall be paid to the county treasurer.

Id.—Power of Legislature—General Laws Affecting Municipal Corporations.—The legislature may pass general laws affecting municipal corporations, without reference to whether such corporations were formed before or after the constitution of 1879.

Id.—Construction of Constitution—"Municipal Affair."—The disposition of fines for misdemeanors punished by virtue of the state law, and not of any municipal ordinance, is not a "municipal affair" under a special charter which says nothing about fines, and leaves their disposition to be regulated by the Penal Code.

APPEAL from a judgment of the Superior Court of Yuba County. K. S. Mahon, Judge presiding.

The facts are stated in the opinion of the court.

Arthur H. Redington, City Attorney, for Appellant.

M. T. Brittan, District Attorney, for Respondent.

CHIPMAN, P. J.—Action to recover back certain moneys collected on fines imposed by the police judge of the police court of plaintiff and alleged to have been paid over to defendant for the use and benefit of plaintiff.

Defendant demurred to the complaint for insufficiency of facts, and the court sustained the demurrer on this ground alone. Other grounds are stated in the demurrer, but as they are not mentioned in respondent's brief, they will not be noticed. Plaintiff failing to amend its complaint, judgment passed for defendant and plaintiff appeals.

It was alleged in the complaint that there existed in plaintiff city a police court presided over by a police judge who had exclusive jurisdiction over municipal misdemeanors committed within the corporate limits of the city; and that he had jurisdiction, concurrently with the justice of the peace, over such offenses under state laws as were within the jurisdiction of the justice court for the judicial township of which the city formed a part. There are two counts in the complaint:—

1. To recover certain fines imposed upon and collected from persons adjudged guilty of certain state misdemeanors, which said fines had been paid over to the county treasurer on the assumption that they belonged to the county;

2. To recover certain moneys in cases where fines had been imposed for state misdemeanors and the convicted persons had elected to serve imprisonment in lieu of paying the imposed fine, but afterwards elected to pay the remaining unpaid portion of said fines, and did so pay the same to the

county treasurer through the hands of the sheriff of said county.

Claims were duly presented by plaintiff to defendant through the board of supervisors for the amounts thus coming into defendant's possession, and were rejected, and in due time this action was commenced.

The city of Marysville was first incorporated by act of March 3, 1857 (Stats. 1857, p. 40). It was reincorporated by act of March 7, 1876, (Stats. 1875-1876, p. 149,) "with the powers and under the provisions of title three of the Political Code of this state," (part IV, presumably, though not so expressed in section 1 of the act. See Pol. Code, sec. 4354 et seq.; *Ex parte Mauch*, 134 Cal. 500, [66 Pac. 734].) Appellant claims under the provisions of section 13 of the act of 1876, *supra*, which is as follows: "The police judge shall exercise all the powers granted him by the Political Code, except the provision of section 4425 [relating to the appointment of a clerk]. All moneys collected by him as such police judge shall be paid into the general fund of said city, on the first Monday of each month. He shall receive for such services an annual salary of five hundred dollars. . . ." The Penal Code, section 1457, as it stood when Marysville was reincorporated, read as follows: "Upon payment of the fine, the officer must discharge the defendant if he is not detained for any other legal cause, and apply the money to the payment of the expenses of the prosecution, and pay over the residue, if any, within ten days, to the county or city treasurer, according as the offense is prosecuted in a justice's or police court. If the fine is imposed, and paid before commitment it must be applied as provided in this section." The disposition of fines is further provided for as follows: "All fines and forfeitures collected in any court, except police courts, must be applied to the payment of the costs of the case in which the fine is imposed, or the forfeiture is incurred, and after such costs are paid, the residue must be paid to the county treasurer of the county in which the court is held." (Section 1570.) Both of these sections were amended in 1901. Section 1457 was amended by adding "provided that all forfeitures and fines collected for the violation of any city ordinance, whether in the police court or justices' court, shall be paid over to the city treasurer of the city in which such

ordinance is in force.''   Section 1570 was amended to read:
''All fines or forfeitures collected in any court [omitting the
exception as to police courts in the original section] must be
paid to the county treasurer . . . ; provided, that all fines
and forfeitures collected in any court for the violation of any
city ordinance shall be paid to the city treasurer in which
such ordinance is in force.''   (Stats. 1901, p. 88.)

In effect these amended sections require all fines collected
in any court (less the costs incurred), except fines for the
violation of city ordinances, to be paid to the county treas-
urer.   Appellant concedes that these sections affect the police
courts established in cities and towns chartered under the gen-
eral Municipal Incorporation Law of this state (Stats. 1883,
p. 93), and those existing in cities which owe their corporate
powers to freeholders' charters provided by the constitution.
But appellant contends that municipalities which were incor-
porated under special acts of the legislature before the new
constitution went into effect, and which have never elected to
incorporate under the general Municipal Incorporation Law,
are not bound by these sections of the general law found in
the Penal Code, ''where direct provision governing the same
subject-matter is to be found in the charter itself.''

We must, by the terms of the act of reincorporation of
plaintiff, look to the Political Code to ascertain the powers of
the police judge.   Section 4424 et seq. of that code define the
criminal jurisdiction of the police court.   Section 4431 also
provides as follows: ''Proceedings in criminal actions, triable
in such courts [police courts] are regulated in part II, title
XI, chapter I of the Penal Code.''   It is in this part, title,
and chapter of the Penal Code that we find the sections 1457
and 1570, *supra*, relating to the disposition of fines and for-
feitures.   To determine the powers of the municipality and of
its officers, we must look to the provisions of the Political Code
and Penal Code, so far as these provisions have, by the char-
ter itself, been made applicable.   Appellant contends for the
principle that express provisions of the charter, enacted by
special legislative act, cannot be changed by the enactment of
general laws.   (Citing Smith's Beach on Municipal Corpo-
rations, secs. 101, 104, 105; Cooley's Constitutional Limita-

tions, 183.). The principle was applied in *People* v. *Hill*, 125 Cal. 16, [57 Pac. 669], where it was said of the charter of Salinas City there involved: "The charter being the law for a special case is not in conflict with a general law which provides otherwise. Even a general law subsequently passed, does not repeal laws expressly made for special cases, unless an intent that the general law shall have such effect is manifested in some mode in the general law." Assuming that the "moneys collected" by the police judge, mentioned in section 13 of the act of 1876, mean fines and forfeitures, they nevertheless come into his hands by virtue of the provisions of the general law. This general law (the Political Code and the Penal Code) cannot be restricted to its provisions as they stood when referred to by the charter, but must be held to be the provisions as defined from time to time by the legislature.

Surely the legislature could amend or repeal these provisions; and, when amended or repealed they would, we think, control the charter provisions on the same subject, for to no others could the charter then refer. The powers of the police judge to try cases and impose fines come alone from this general law, and it is sufficiently clear that when the legislature made the general law, in effect a part of the charter, it retained its power over the general law to amend or repeal it, and when it did the one or the other it became the law, and the only law, to which section 13 of plaintiff's charter could refer. The charter, by its reference to the Political Code (see sec. 4431 of that code), provided that proceedings in criminal actions triable in police courts, shall be regulated by the provisions of the Penal Code. The disposition of fines is part of such proceedings and may be regulated the same as may the jurisdiction of the police judge be regulated. In giving the police court jurisdiction over what are termed state misdemeanors, that officer is exercising the functions of justice of the peace, who is a county officer, and should be, and, we think, is subject, in the exercise of this jurisdiction, to the general law so far as applicable to his duties while acting in such capacity. He imposes fines in these cases alone through the authority given him by the general law as he finds it and not otherwise. The effect of the amendments to the Penal

Code, upon the disposition of fines and forfeitures, is not brought about by the amendment of some general law independent of the charter, but by an amendment to a general law which by the terms of the charter had been made applicable to it.

The legislature may pass general laws affecting municipal corporations without reference to whether such corporations were formed before or after the constitution of 1879. (See cases in notes to section 6 of article XI of Treadwell's Annotated Constitution of California; also, *Ex parte Braun*, 141 Cal. 204, [74 Pac. 780].)

It is claimed, however, that the amendment of the constitution of 1896 has taken away from the legislature the power to interfere in "municipal affairs," and that this matter of the disposition of fines is a municipal affair. We do not so regard it. If the charter clearly made these fines a part of the revenue of the city, by which, in part, the city was to derive its support, there might be some force in the suggestion. But the charter says nothing about fines; it is in the Penal Code alone we find the mode pointed out for their disposition. The police judge, in imposing fines for violations of state laws, is enforcing the general law as he finds it, and is performing the duties of a justice of the peace concurrently with that officer. Both officers are equally within the regulating power of the legislature in the trials of offenses punishable by state law, and such trials cannot be said to be "municipal affairs" as contemplated by the constitution. It would be vain to attempt to extract from the decisions of the supreme court a definition of these terms alike applicable to all cases. It seems to be conceded that the court has not undertaken and probably never will undertake to give a general definition of these words, but that their meaning must be determined in each individual case as it arises, and upon its own facts. Probably the cases of *Fragley* v. *Phelan*, 126 Cal. 383, [58 Pac. 923], and *Ex parte Braun*, 141 Cal. 204, [74 Pac. 780], throw as much light on the question as any of the decided cases.

The judgment is affirmed.

McLaughlin, J., and Buckles, J., concurred.