[Civ. No. 1720. Fourth Appellate District.—July 15, 1935.]

LOS ANGELES BREWING COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Hanna & Morton for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader and Robert F. Shippee, Assistants City Attorney, and G. Ellsworth Meyer, Deputy City Attorney, for Respondents.

MARKS, J.—This is an action by the Los Angeles Brewing Company to enjoin defendants from enforcing an ordinance imposing a license tax on the sale and distribution of alcoholic beverages which contained more than one-half of one per cent of alcohol by volume. The action is prosecuted upon the theory that the ordinance is unconstitutional.

Plaintiff is a domestic corporation with its principal place of business in the City of Los Angeles. It had been engaged in the business of manufacturing, selling and distributing beer and other malt beverages. Between April 7, 1933, and September 7th of the same year the beer which it sold had an alcoholic content, by volume, of not less than one-half of one per cent and not more than four per cent.

The City of Los Angeles is a municipal corporation organized and existing under a charter which reserved to the city the control of its municipal affairs. The two individual defendants were officers of the city.

Early in 1933 the United States Congress passed an act which declared that beverages having an alcoholic content of not more than three and two-tenths per cent by weight were not intoxicating and authorized their sale. An alcoholic content of $3\,{}^2/_{10}$ per cent by weight is equal to 4 per cent by volume.

By an act effective April 6, 1933 (Stats. 1933, p. 340), the California legislature placed an excise tax on beers and wines containing not less than one-half of one per cent and not more than three and two-tenths per cent of alcohol by weight. The same legislature passed another bill, effective April 27, 1933,

levying a like excise tax on the same beverages and providing for the licensing of places of business where such beverages would be consumed on the premises with meals, and other places where they would be sold in original packages for consumption elsewhere. The latter act included practically all the provisions of the earlier act that are material here. Both acts provided that they should become operative whenever the sale in California of the beverages there mentioned were not prohibited by the laws of the United States.

On August 22, 1933, there was in full force and effect in the City of Los Angeles its ordinance, number 56,600, which had for its purpose the licensing of certain professions, trades, callings and occupations carried on within the city, and, as alleged in the complaint, provided ''in substance and effect that it shall be unlawful for any person, firm, or corporation to engage in any of the businesses in the City of Los Angeles defined and described in the said Ordinance without first obtaining from the City Clerk of the City of Los Angeles a license so to do, and paying the license fee provided in such Ordinance for carrying on any such business; . . . '' On that date the city council adopted Ordinance Number 72,975, which amended the license ordinance and is in part as follows: ''Section 1. That Sec. 35 of Ordinance No. 56,600 entitled 'An Ordinance providing for licensing and regulating the carrying on of certain professions, trades, callings and occupations' approved November 24, 1926, be and the same is hereby amended to read as follows:

''Sec. 35. For the purpose of this ordinance a distributor of alcoholic liquors shall mean and include every natural person, partnership, association, company, corporation, organization, or manager, agent, servant, officer, or employee of any of them, who, within the City of Los Angeles produces, brews, ferments or manufactures any alcoholic liquors as defined herein, or who, in the case of an alcoholic liquor, produced, brewed, fermented, or manufactured outside the City of Los Angeles, sells, offers for sale, delivers or distributes any such alcoholic liquors to any person or place within said city.

''The term 'alcoholic Liquors' as used herein shall mean and include all spirituous, vinous and malt beverages and any other beverage or mixture of beverages which contain more than one-half of one per cent by volume of alcohol.

"Each and every distributor of alcoholic liquors, as defined herein, shall pay a license tax in the sum and in the manner hereinafter provided upon all alcoholic liquors sold, offered for sale, or delivered by such distributor or his agent, in or to any place within said city.

"The rate of license tax as hereinabove provided shall be as follows:

"Per barrel ........................31 cents
Per one-half barrel............... ....16 cents
Per one-third barrel................11 cents
Per one-fourth barrel ............... 8 cents
.Per one-sixth barrel ................ 6 cents
Per one-eighth barrel ............... 4 cents
Per one case or fractional part thereof. 3 cents

and for the purpose of this ordinance a barrel is defined to be equal to thirty-one (31) gallons. A case is defined to be twelve (12) bottles containing more than sixteen (16) and not more than thirty-two (32) fluid ounces or twenty-four (24) bottles containing sixteen (16) or less fluid ounces.

"Such license tax shall be paid and collected by means of revenue stamps issued and sold by the City Clerk of said city.

"Each such distributor shall affix to every barrel or fractional part thereof, or case of such alcoholic liquor, revenue stamps in the amount set forth in this section." This amendatory ordinance went into effect October 1, 1933.

On September 7, 1933, plaintiff brought this action to enjoin defendants from enforcing the provisions of section thirty-five of the license ordinance as amended. In addition to the facts already detailed, the complaint and an amendment to it alleged that plaintiff had obtained a license from the state board of equalization, as provided in the two excise tax bills we have mentioned, and proposed to manufacture and distribute beer in the City of Los Angeles; that defendants threatened to arrest plaintiff's employees under the penal clause of the license ordinance if the license stamps were not procured and attached to the containers of its beer; that the city stamp tax was illegal and void for various reasons.

Defendants filed a general and special demurrer to the complaint as amended, which was sustained without leave to amend. The case comes before us on the judgment roll on appeal from the judgment entered following the sustaining of

the demurrer. The order sustaining the demurrer was made and the judgment rendered on September 20, 1933.

The charter of the City of Los Angeles contained the following provisions pertinent to this action: (Stats. 1925, p. 1024 et seq.): "Sec. 2. The City of Los Angeles, in addition to any other rights and powers now held by it, or that hereafter may be granted to it under the Constitution or laws of the state, shall have the right and power, subject to the restrictions in this charter contained: . . . (4) To make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this charter; provided, however, that nothing herein shall be construed to prevent or restrict the city from exercising or consenting to, and the city is hereby authorized to exercise, any or all rights, powers and privileges heretofore or hereafter granted or prescribed by general laws of the state. . . . (6) To make and enforce within its limits all such local, police, sanitary, safety, welfare and other regulations as are not in conflict with general laws, and to exercise such jurisdiction outside its limits in such manner as may be authorized by law. . . . (11) . . . (a) To enforce law and promote the public peace, health, safety and welfare; . . . (e) to license and regulate under general and uniform laws, any lawful business or calling, and to impose other license fees; . . . Sec. 3. . . . (5) No discrimination in the amount of license tax shall be made between persons engaged in the same business, otherwise than by proportioning the tax to the amount of business done."

Plaintiff presents four grounds for a reversal of the judgment: (1) that the tax in question was a stamp tax on transactions and not a license tax for conducting a business and therefore illegal and void; (2) that the tax imposed was discriminatory and therefore void; (3) that the amendatory ordinance imposing the tax did not deal with a municipal affair; (4) that the ordinance was in conflict with the general laws of the state.

In considering the first ground for a reversal of the judgment plaintiff urges that the power to levy a tax must be drawn from express statutory authority and the statute must be strictly construed in favor of the taxpayer and against the taxing body. (*R. C. A. Photophone, Inc.,* v. *Huffman,* 5 Cal. App. (2d) 401 [42 Pac. (2d) 1059].) This rule is too well established in California to need further citation of authority.

■ From this premise it is argued that the license tax in the instant case is not a license for conducting a business but a tax upon each individual sale; that the Los Angeles city charter must be construed as limiting the power of the city to do other than impose a license on the privilege of conducting a business within the city; that as the provisions of the ordinance in question impose a transaction tax and not a license on business, it is unenforceable.

This phase of plaintiff's argument is based chiefly upon the case of *Merced County* v. *Helm,* 102 Cal. 159 [36 Pac. 399]. Without attempting to detail or criticize the subtleties of distinction whereby defendants seek to distinguish that case from the one we are considering, it is sufficient to state that we construe it as supporting the position assumed by plaintiff. *Merced County* v. *Helm, supra,* has been cited with approval on the question we are considering in the cases of *Arfsten* v. *Superior Court,* 20 Cal. App. 269 [128 Pac. 949], and *In re Dees,* 46 Cal. App. 656 [189 Pac. 1050].

The case of *Ex parte Mansfield,* 106 Cal. 400 [39 Pac. 775], was decided within a year from the decision of the Merced County case. The two cases are factually quite similar. In the Mansfield case the Supreme Court reached an opposite conclusion from that reached in the Merced County case and made an attempt to distinguish the two cases. The question we are considering was again before the Supreme Court on facts analogous to those of the instant case in *Ex parte Seube,* 115 Cal. 626 [47 Pac. 596], where it was said: "He (petitioner) claims that his imprisonment is unlawful because the ordinance is void, and he bases this contention upon the decision in the case of *Merced County* v. *Helm, supra,* in which it was held that an ordinance in some respects similar to the Colusa county ordinance was in excess of the powers of the board of supervisors, because it attempted to impose a license tax upon each single sale and not upon the business of selling. I have always considered that the rule of construction applied in that case went to the extreme verge of strictness, and the court has been disposed to limit rather than extend its application, as appears from the manner in which the case of *Ex parte Mansfield, supra,* was distinguished in 106 Cal. 400 [39 Pac. 775]. In this case the language of the ordinance differs from that of the ordinance construed in

*Merced County* v. *Helm, supra,* and clearly supports a construction which brings it within the conceded power of the board of supervisors 'to license for the purposes of regulation and revenue all and every kind of business not prohibited by law and carried on in such county'. (Stats. 1891, p. 306.) . . . The claim of petitioner is, that section 4 must be read by itself, and without reference to the other sections and parts of the ordinance, and that, so read, it is fatally affected by the vice found in the Merced county ordinance—that is to say, that it attempts to impose the license tax upon every single act of selling. But we know of no rule of statutory construction which requires us to take one section of the ordinance by itself and give it a construction at variance with other sections. On the contrary, the rule is to look at the whole ordinance, and to give each section a construction which will make the whole consistent and operative according to the apparent intent of the framers. . . . If the letter of the ordinance embraces all who sell, it certainly embraces all who make a business of selling; and petitioner cannot claim that the acts charged in the complaint upon which he was convicted do not come within the letter of the ordinance. The only point he can urge is, that the whole ordinance is void because it imposes, or attempts to impose, a license tax upon every single sale. Speaking for myself, I should say that if the ordinance, looking exclusively to section 4, necessarily bore that construction, it would only be void *pro tanto.* But this point need not be decided, because it is perfectly clear from all the provisions of the ordinance that the intention of its framers was to impose the tax only upon the business of selling. It is only those who carry on the business who incur the penalty, and it was for carrying on the business that the petitioner was arrested and prosecuted.'' The cases of *Ex parte Mansfield, supra,* and *Ex parte Seube, supra,* have been followed in the following cases: *San Luis Obispo County* v. *Greenberg,* 120 Cal. 300 [52 Pac. 797], *County of Los Angeles* v. *Eickenberry,* 131 Cal. 461 [63 Pac. 766], *Cuzner* v. *California Club,* 155 Cal. 303 [100 Pac. 868, 20 L. R. A. (N. S.) 1095], and *In re Pierce,* 12 Cal. App. 319 [107 Pac. 587].

It is our conclusion that the rule announced in *Ex parte Seube, supra,* and the cases following it must be controlling here. As we have observed, the complaint alleges that the license tax was only to be imposed on those engaged in busi-

ness in the City of Los Angeles. It is admitted that plaintiff was engaged in the business of manufacturing and distributing beer within the City of Los Angeles. This business was one which the City of Los Angeles was empowered to license.

Plaintiff urges further that assuming the conclusions which we have just reached to be correct, still the method of computing and collecting the tax provided for in the ordinance makes it strictly a transaction tax, and no other, which the City of Los Angeles had no power to impose. It is true that the ordinance required the distributor of beer to purchase license tax stamps and attach them to the containers of the beverage disposed of. We can find no serious objection to this procedure. It was but a convenient method of determining the volume of business done and of collecting the license upon such volume.

Plaintiff next urges that the license tax was discriminatory and therefore void. In this connection it first calls attention to subdivision five of section three of the city charter which prohibits discrimination in the amount of license tax levied on persons engaged in the same business except ''by proportioning the tax to the amount of business done''. Plaintiff urges that in the phrase ''to the amount of business done'' the word ''amount'' must be held to mean the volume measured in money and not in quantity. Webster defines ''amount'', when used as a noun, as ''the sum total of two or more sums or quantities; the aggregate; the whole quantity; a totality''. We can see no more valid reason for holding that the use of the word in the quoted phrase need be restricted to the total of sales, when measured in dollars and cents, than to the total quantity when measured in the total number of separate articles sold. Both usages being correct according to common and accepted practice either may be made applicable. A very similar contention was made in the case of *Los Angeles* v. *Los Angeles Independent Gas Co.*, 152 Cal. 765 [93 Pac. 1006], and is resolved against the argument of plaintiff here. That case arose under the provisions of the Los Angeles city charter of 1889 (Stats. 1889, p. 455), where a provision appeared similar to subdivision five of section three of the present charter.

Plaintiff further argues that the questioned provisions of the ordinance were discriminatory and void because they required plaintiff to pay a much higher rate of tax, when

measured on the monetary volume of sales of its beer at $2.40 per case, than it required of a dealer in wines and spirituous liquors sold at $125 per case. This argument is answered by the case of *Los Angeles* v. *Los Angeles Independent Gas Co., supra.* Further, the instant case was filed and judgment entered in September, 1933. At that time the Eighteenth Amendment to the federal Constitution, the Volstead Act, and the Wright Act prohibited the sale of beverages containing more than $3\,{}^2/_{10}$ per cent of alcohol by weight, except on a physician's prescription by a registered druggist. (See, also, Stats. 1933, pp. 340, 625 and 1697.) We cannot assume that the officials of the City of Los Angeles would attempt to license the sale of wine, whisky or other beverages of high alcoholic content while their sale was prohibited by both federal and state laws. They could only license the sale of alcoholic beverages containing not more than three and two-tenths per cent of alcohol by weight, which was the same grade as those sold by plaintiff. A court of equity would find great difficulty in restraining the collection of a license on a legal business because some other persons might be making sales of other articles contrary to the provisions of the law.

■ Plaintiff also urges that the portion of the license ordinance in question was discriminatory and void because it imposed a greater tax upon a dispenser of beer that was manufactured outside the City of Los Angeles than upon one distributing beer made within the city. Plaintiff urges that there was but one license tax placed upon beer manufactured and sold within the city while there was a license tax placed on each transfer of beer which had been made outside of Los Angeles and sold within the city. Plaintiff further argues that a tax had to be paid on a single gift of beer from one friend to another if manufactured outside the city. Of course this last argument is without merit. The ordinance must be construed as a whole. (*Ex parte Seube, supra.*) It imposed a license only on a business. A single gift is not a business (*County of Los Angeles* v. *Eickenberry, supra*), and is not subject to the provisions of the ordinance. The ordinance contained a provision to the effect that if any portion of it be declared unconstitutional such action should not impair the effectiveness of the balance of its provisions. A fair reading of the provisions of the ordinance in question here

leaves the conclusion that there need have been but one set of stamps attached to each container sold within the City of Los Angeles. We are aided in this construction by the following from the case of *County of Los Angeles* v. *Eickenberry, supra,* where a license ordinance was being construed. "It is said by this court in *Ex parte Haskell,* 112 Cal. (412) 416 [44 Pac. 725, 32 L. R. A. (527) 529], in speaking of the duty of courts in upholding ordinances: 'Every intendment is to be indulged in favor of its validity, and all doubts resolved in a way to uphold the law-making power; and a contrary conclusion will never be reached upon light consideration. It is the province and right of the municipality to regulate its local affairs—within the law, of course—and it is the duty of the courts to uphold such regulations, except it manifestly appear that the ordinance or by-law transcends the power of the municipality, and contravenes rights secured to the citizen by the constitution, or laws made in pursuance thereof.' " One of the clauses of section 1 of the amendatory ordinance provided that the absence of a proper tax stamp from a container, after its removal from the premises of a distributor, shall be *prima facie* evidence that the tax had not been paid. Another clause of the same section placed the duty on the consumer who emptied the container, to destroy the tax stamps. From this the conclusion may be drawn that one set of stamps on the container from the time it first left the premises of the first distributor until its contents were emptied by the consumer would satisfy the requirements of the ordinance. With this construction placed upon the ordinance the license tax fell equally upon the distributor who manufactured the beer in Los Angeles and the one who imported his beer into the city for sale there.

The third and fourth specifications of error may be considered together. Plaintiff would seem to admit that if the license ordinance be considered a municipal affair, the right of the city to tax the business of distributing beer might be upheld. Plaintiff urges that at the time of the passage of the amendatory ordinance the regulating and licensing of the sale of alcoholic liquors could not be held to be a municipal affair, although the levying of a license for revenue by a chartered city had previously been held to be such. (*Trebilcox* v. *City of Sacramento,* 91 Cal. App. 257 [266 Pac.

1015]; *In re Nowak,* 184 Cal. 701 [195 Pac. 402].) Plaintiff argues that there can be no precise and lastingly inflexible definition of a municipal affair; that by changes in circumstances what may be a municipal affair to-day may become of general state-wide concern to-morrow. In support of this argument plaintiff cites the following cases which we do not consider it necessary to review in detail: *Helmer* v. *Superior Court,* 48 Cal. App. 140 [191 Pac. 1001]; *City of Marysville* v. *County of Yuba,* 1 Cal. App. 628 [82 Pac. 975]; *Hyatt* v. *Williams,* 148 Cal. 585 [84 Pac. 41]; *Von Schmidt* v. *Widber,* 105 Cal. 151 [38 Pac. 682]; *Ex parte Daniels,* 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172]; *Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660 [262 Pac. 334]. Plaintiff then urges that by the passage of the two excise tax laws by the legislature (Stats. 1933, pp. 340 and 625), and the proposal as an initiative measure of a new section of the Constitution (art. XX, sec. 22) to be voted on at the November election in 1932, and that when it was adopted, a positive determination was evidenced by the people to take the regulation and sale of alcoholic liquors out of the realm of municipal affairs and place them within the classification of those of state-wide concern. We do not so understand these two legislative acts. Section 20 of the Second Excise Tax Law (Stats. 1933, p. 625) gives the power to counties, cities and counties, and cities, to impose by ordinance a license tax on the holders of state "on sale" and "off sale" licenses. Far from showing an intention to remove the licensing of the business of dispensing liquor from municipal control and giving this function over to the state this section shows an express intent to leave such licensing, within certain limitations, to local control. The effect of the act is to give two separate political bodies the right to license, for revenue, dealers in liquor. This right has been recognized by our courts. (*County of Los Angeles* v. *Eickenberry, supra.*) The license tax imposed by the ordinance in question is within the limit fixed by the legislature. Therefore there is no conflict between the two enactments.

■ The initiative measure which added section 22 to article XX of the Constitution did not become operative until after the judgment in this case was entered. The adoption of a constitutional amendment, which by its terms was not to become operative until the happening of a future event, should not be held to declare the public policy of the state or the

intention of the people adopting it, until its operative date, and until such time it would appear to be the intention of the people to let existing conditions continue undisturbed. As was said in *People* v. *Draper*, 134 Cal. App. (Supp.) 787 [22 Pac. (2d) 604] : ''Section 22, recently added to Article XX of our state Constitution, does not influence this case. Assuming, without deciding, that when that section becomes operative the ordinance may no longer be enforced, because all control will be in the state as distinguished from its political subdivisions, it is plain that the section is not yet operative. By its own terms two conditions must concur before it becomes effective: 'in the event' the Wright Act is repealed, 'and if and when it shall become lawful under the Constitution and laws of the United States to manufacture, sell, purchase, possess or transport intoxicating liquor for beverage purposes within the United States'. The first event has taken place, but until the repeal of the Eighteenth Amendment to the Federal Constitution, the second condition will not be satisfied, for by that amendment the manufacture, etc., of intoxicating liquor for beverage purposes is prohibited. For the present, then, section 22, Article XX, of the state Constitution, has no effect whatever, and a city may still without its limitations 'make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws'. (Sec. 11, Art. XI, State Const.) ''

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.