[Civ. No. 13592. Second Dist., Div. Three. Aug. 10, 1942.]

UNION PACIFIC RAILROAD COMPANY (a Corporation) et al., Respondents, v. CITY OF LOS ANGELES, (a Municipal Corporation), Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Clyde P. Harrell, Jr., and Bourke Jones, Deputies City Attorney, for Appellant.

E. E. Bennett, Malcolm Davis and Edward C. Renwick for Respondents.

SHINN, J.—This case was tried upon stipulated facts. Plaintiff Union Pacific Railroad Company owns and operates a number of oil wells and plaintiff Las Vegas Land and Water Company owns one well, which is operated for it by its co-plaintiff, drilled from locations within the city of Los Angeles directionally so as to penetrate an oil producing zone at points wholly within the adjoining city of Long Beach. The entire production of the wells comes from this zone and from

depths of from 3,000 to 4,000 feet. The casing is so perforated and packed that one of the wells produces from a section of the zone in the city of Long Beach 145 feet at the top and 230 feet at the bottom, measured horizontally from the common boundary line of the two cities; the section of the zone from which the second well produces is located at the top 325 feet and at the bottom 409 feet from the Los Angeles boundary and the third well produces from the same zone as the other two in a section which at the top is 170 feet and at the bottom 320 feet within the boundaries of Long Beach. All three are flowing wells and the oil, while coming from the sections of the structure lying wholly within the city of Long Beach, is produced at the surface within the city of Los Angeles. The wells were drilled at their surface locations because the owners at the time were unable, because of a restrictive ordinance and inability to reach an agreement with the city of Long Beach, to obtain permits from that city for the drilling of wells therein. Plaintiffs therefore obtained permits from the city of Los Angeles for the location, construction, maintenance and operation of oil well derricks for said wells and for the drilling for oil in such surface locations, in compliance with the terms of the Municipal Code and upon payment of the fees pertaining thereto. The principal California offices of both corporations and all of the management activities pertaining to the operation of oil lands are located in the city of Los Angeles. The stipulation of facts contains the following:

"Oil produced by the Union Pacific Railroad Company from its wells in the Wilmington Oil Field is gathered and distributed as follows: The oil from each well flows naturally or is pumped through a pipe line to two 250-barrel capacity gauging tanks. With respect to almost all wells, each well is served by its own group of two gauging tanks. In one case only, several wells are served by the same gauging tank. The oil, after being gauged in the gauging tanks, is pumped through connecting pipe lines to a larger group of 2,000 barrel capacity tanks, known as 'shipping stations,' several of which are located in the Wilmington Oil Field. From the shipping stations the oil is pumped through pipe lines to the receivers and purchasers thereof. The surface equipment incidental to the operation of each of the three wells in question consists of a derrick, two gauging tanks and the pipe line connecting the well and the gauging tanks. All this surface equipment for these three wells is located in the City of Los

Angeles. The oil produced by LVL&W Well No. 1 is pumped from its gauging tanks into Shipping Station No, 1, which is located in the City of Los Angeles. The oil produced by U. P. Well No. 20 and U. P. Well No. 47 is pumped from their respective gauging tanks to Shipping Station No. 3, which is located in the City of Los Angeles.

"The gathering system, consisting of gauging tanks, shipping stations, power units and pipe lines owned and operated by the Union Pacific Railroad Company in the Wilmington Oil Field for the purpose of gathering the oil produced by its various wells and transporting the same to its purchasers in constructed and operated without regard to the common boundary line of the City of Los Angeles and the City of Long Beach. For instance, U. P. Well No. 96 is located entirely within the City of Long Beach and the gauging tanks for this well are located at a distance of approximately 375 feet therefrom and wholly within the City of Los Angeles. Likewise U. P. Well No. 102 is located wholly within the City of Long Beach and its gauging tanks are located 700 feet distant in the City of Los Angeles.

"All oil produced by wells owned and operated by Union Pacific Railroad Company in that portion of the City of Long Beach north of the Cerritos Channel, consisting of 27 wells, is pumped from the various gauging tanks of the said respective wells to Shipping Station No. 3, which is located in the City of Los Angeles. All oil from wells owned and operated by the Union Pacific Railroad Company in that portion of the City of Long Beach lying south of the Cerritos Channel, comprising 32 wells, is pumped from the various gauging tanks of the said respective wells to Shipping Station No. 5, which is located within the City of Los Angeles. All oil produced by Las Vegas Land and Water Company and Union Pacific Railroad Company in the Wilmington Oil Field is delivered to the purchasers thereof from shipping stations located in the City of Los Angeles."

The city is attempting to collect from plaintiffs license fees for engaging in the business of producing oil, measured in part by the production from said three wells, under certain provisions of the Municipal Code which provide that no person shall engage in any business required to be licensed under the ordinance without first obtaining a license authorizing them to engage in the licensed business and that "the fees required to be paid for each of the several businesses licensed under the provisions of this ordinance are prescribed in the

following sections.'' Section 21.124 reads: ''For every person producing oil from any well located in the City of Los Angeles, the sum of $2.00 per quarter for each such well producing four hundred (400) barrels or less of oil per quarter, plus ½¢ per barrel of oil produced by each such well in excess of four hundred (400) barrels per quarter.''

The judgment of the trial court declares that said section 21.124 ''is inapplicable to oil wells drilled from surface locations in the City of Los Angeles in a directional manner so as to, and which do, produce oil from oil-bearing sands or zones which are penetrated by such wells at locations without the boundaries of the City of Los Angeles, and that accordingly

''1. The plaintiff, Union Pacific Railroad Company, a corporation, is not required and shall not be required to pay to the defendant, City of Los Angeles, the license fees provided for in said Section 21.124 with respect to each of those two certain oil wells owned by the said plaintiff known as 'Union Pacific Well No. 20' and 'Union Pacific Well No. 47,' or with respect to oil produced or which shall in the future be produced from each of said two oil wells, or for the privilege of producing oil therefrom, each of which wells was drilled from a surface location in the City of Los Angeles in a directional manner so as to and which do penetrate and produce oil from oil-bearing sands or zones located in the City of Long Beach.

''2. The plaintiff, Las Vegas Land and Water Company, a corporation, is not required and shall not be required to pay to the defendant, City of Los Angeles, the license fees provided for in said Section 21.124 with respect to that certain oil well owned by said plaintiff known as 'Las Vegas Land and Water Company Well No. 1,' or with respect to oil produced or which shall in the future be produced from said oil well, or for the privilege of producing oil therefrom, which said well was drilled from a surface location in the City of Los Angeles in a directional manner so as to, and which does, penetrate and produce oil from oil-bearing sands or zones located in the City of Long Beach.''

Whether these declarations are correct is the first question in the case and this raises the inquiry whether the license fee required by ordinance to be paid for the business in which plaintiffs are severally engaged applies to plaintiffs so far as these three wells are concerned as persons ''producing oil from any well located in the City of Los Angeles.'' Union Pacific Railroad Company owns and operates 59 wells located and producing oil entirely within the adjoining city

of Long Beach and 86 wells located and producing oil entirely within the city of Los Angeles, that is to say, the entire bore of each of these wells is so located. The city charges no business license fee measured by the production from the 59 wells located in Long Beach but does charge said plaintiff, computed as provided in the ordinance, for the 86 wells located in the city of Los Angeles. The Municipal Code does not recognize as a special class wells drilled from locations within the city but bottomed and produced from areas outside of the city boundaries. The question therefore is whether within the meaning of the ordinance such wells are located within the city. We think they are. Certainly they are not located outside of the city. They are within the city just as a telephone line would be or an interurban railway, highway or pipe line would be which extended through a portion of the city and into surrounding territory. In ordinary affairs it would be quite customary, we think, to speak of the point where a bore for an oil well was started, from which the work of drilling was carried on, from which the well was operated, and where production came to the surface as the point where the well was located. The word ordinarily has reference to the location of an object upon the surface of the ground. Webster's New International Dictionary, Second Edition, defines the word "locate," in the sense here intended, "To designate the site or place of; to define the location or limits of, as by a survey; . . . in passive, to have place or seat."

█ The ordinance must be construed in accordance with the intention which is discernible from its terms. █ Plaintiffs contend that if it had been intended in computing the license fee to include production from wells surfaced within the city and drawing oil from points outside of the city, such wells would have been specifically described and that therefore it appears to have been the intention to exclude such wells from the operation of the ordinance. We think a contrary view is more reasonable. Considering the purpose of the ordinance, no good reason exists why such wells should have been excluded, with the resulting discrimination in favor of operators of wells like those of plaintiffs. The more reasonable view would seem to be that there was no intention to exclude such directionally drilled wells. Such wells are not uncommon and the fact that no special provision was made for them would indicate that they were considered as wells located at the several points upon the surface from which they were drilled and would necessarily have to produce.

It must be borne in mind that it is not the act of producing oil that is licensed but it is the business of producing oil from wells located within the city. (*L. A. Brewing Co.* v. *Los Angeles,* (1935) 8 Cal. App. (2d) 379 [48 P. (2d) 65]; *McAdams Oil Co.* v. *Los Angeles,* (1939) 32 Cal. App. (2d) 359 [89 P. (2d) 729]; *Barker Bros., Inc.* v. *Los Angeles,* (1938) 10 Cal. (2d) 603, 609 [76 P. (2d) 97]; *Utilities Natural Gas Co.* v. *State,* (1938) (Tex. Civ. App.) 118 S. W. (2d) 927.) Certainly the business of the plaintiffs of producing oil is carried on in the city of Los Angeles and a part of it consists of the operation of the wells in question; the production only furnishes a basis for measuring the tax on the privilege of carrying on the business.

It is pointed out by the city that oil is ''produced'' when it is captured and brought to the surface and not until then (see *Graciosa Oil Co.* v. *Santa Barbara,* (1909) 155 Cal. 140, 144 [99 Pac. 483, 20 L. R. A. (N. S.) 211], quoted by the Supreme Court in *County of Ventura* v. *Barry,* (1929) 207 Cal. 189, 192 [277 Pac. 333]; *Stone* v. *City of Los Angeles,* (1931) 114 Cal. App. 192, 202 [299 Pac. 838]; *Callahan* v. *Martin,* (1935) 3 Cal. (2d) 110, 117 [43 P. (2d) 788, 101 A. L. R. 871]). But we regard the determinative fact to be that the oil from plaintiffs' wells is produced from wells located within the city.

We entertain no doubt that so far as the three wells are concerned plaintiffs are engaged in the business of producing oil from wells located within the city of Los Angeles and that it matters not that the oil itself originates in a section of a zone outside of the city.

It is also contended by respondent, although this point was not decided by the trial court, that a construction of the ordinance making it applicable to these wells which draw oil from outside the city limits would render it void as being in excess of the authority which may be delegated by the Legislature to a municipality. The argument assumes that the city by the ordinance is attempting to exact a license tax for a business operated outside of the City of Los Angeles, and it is contended that it has no power to do this. Plaintiffs' business, including the operation of the wells in question, is within the city. Although the product to which the business relates originates outside of the city, it comes into possession of plaintiffs from the wells at the surface. It seems to us that plaintiffs are in the same position as any merchant is who pays a license fee for the privilege of carrying on business in the city

and whose business consists in part of handling merchandise which originates at points outside of the city. The receipt of merchandise purchased outside of the city would not be the conduct of business outside of the city, and from the fact that the oil originates from plaintiffs' wells in the territory of Long Beach it does not follow that as to those wells plaintiffs are engaged in business outside of Los Angeles city.

The facts of the instant case are not at all comparable to those in *Matter of Application of Smith*, (1917) 33 Cal. App. 161 [164 Pac. 618], relied upon by plaintiffs, in which the court held void an ordinance of the city of Tropico which attempted to exact license fees for the privilege of operating a motor bus through the city of Tropico as an incident to the business of transporting passengers between the cities of Bakersfield and Los Angeles. Even if it were conceded that as to the three wells in question plaintiffs are also engaged in business in the city of Long Beach, their contention is fully answered by the decision in *California F. S. Co.* v. *Santa Monica,* (1929) 206 Cal. 714 [275 Pac. 948].

The judgment is reversed.

Schauer, P. J., and Wood (Parker), J., concurred.